**UNITED STATES of America**
v.
**Jural BORDERS.**
No. 1460.

United States District Court
N. D. Alabama,
Jasper Division.
June 28, 1957.

William L. Longshore, U. S. Atty., and W. G. West, Jr., Asst. U. S. Atty., Birmingham, Ala., for the United States.

R. Macey Taylor, Birmingham, Ala., for Juvenile Jural Borders.

GROOMS, District Judge.

This is a proceeding under the Juvenile Delinquency Act. 18 U.S.C.A. § 5031 et seq. The information charges that the defendant, in violation of 18 U.S.C.A. § 1992, did, on March 12, 1957, wilfully derail and wreck twenty-one cars and three diesel units of a fifty-eight car— three diesel unit interstate freight train of the Southern Railway Company, by breaking a switch lock and immobilizing the switch lever thereby leaving the switch in a split position.[1]

The defendant did not testify in his own defense. He was twelve years of age at the time the wreck occurred. Counsel in his behalf duly moved for judgment of acquittal. In particular, he contends that since the defendant is under fourteen years of age, the common law principle, that a child over seven but under fourteen is presumed to be without criminal capacity,[2] is here applicable and that the evidence does not sufficiently rebut this presumption.

Prior to the adoption of the Federal Juvenile Delinquency Act of 1938, the Federal criminal law was lacking in any comprehensive provisions on the subject of juvenile delinquency. The juvenile offender against the laws of the United States was treated and prosecuted in the same manner as an adult. The only exception was found in the power conferred upon the Department of Justice to surrender the offender to State authorities if he had also committed a State offense or was delinquent under the laws of a State that could and would assume jurisdiction over him. Attorney General Cummings, in explaining the bill to the House and Senate Judiciary Committees,[3] wrote them, in part, as follows:

"Students of criminology and penology generally agree that it is undesirable, from the standpoint both of the community and of the individual, that all juvenile offenders be treated as criminals. Many of them can be reclaimed and made useful citizens, if they are properly treated and cared for, and are not permitted to mingle with mature and perhaps hardened criminals. In order to achieve these purposes it is important that juvenile offenders should not become inmates of penitentiaries or other penal institutions in which adults are incarcerated. It it likewise advisable that a juvenile delinquent for whom there is some hope of rehabilitation should not receive the stigma of a criminal record that would attach to him throughout his life. * * *

"* * * Informal procedure of this kind has been found in many of the States conducive to attaining the humane and beneficent objects of such legislation. * * *"

1. After the derailment, the switch lock was found to be broken; the switch lever had been raised from its recess and the shackle or bow of the lock had been replaced in position. The lever was resting on top of the shackle. The wreck caused damages amounting to $61,648.21.

2. Martin v. State, 90 Ala. 602, 8 So. 958, 24 Am.St.Rep. 844; 27 Am.Jur. 820, § 97.

3. 75th Congress House Report No. 2618 and Senate Report No. 1989.

■ The special procedures for which provisions are made in the Act are calculated to reclaim young offenders against Federal laws, for lives of useful citizenship.[4]

■ Congress by express provision[5] has removed the criminal stamp from the proceedings authorized by the Act. A proceeding under the Act results in the adjudication of a status rather than the conviction of a crime[6] with the stigma that attaches to such conviction. A trial under the Act is not a criminal trial and a strict application of criminal legal rules, procedural or substantive, will frustrate the purposes of the Act.[7] Constitutional and statutory safeguards respecting defendants in criminal cases do not apply. The Federal Rules of Criminal Procedure, 18 U.S.C.A.,[8] likewise do not apply, so far as they are inconsistent with the Act. To sustain an adjudication of delinquency, most of the authorities require the same amount and kind of proof as would be required in an ordinary civil action.[9]

■■ The Act was enacted with the realization that the youthful offender does not possess maturity of judgment and capacity to fully comprehend the nature or consequences of his offense.[10] If criminal capacity must be established in precise conformity with the rules in criminal cases as a condition of a finding of delinquency, the process by which this is accomplished will undermine the predicate in realization of which the Act was enacted. The salutary objectives of crime prevention and delinquency rehabilitation will not be advanced in so holding. A finding overruling the motion for a judgment of acquittal and adjudicating the defendant a juvenile delinquent will be entered herein.

4. See House Report.

5. Section 5032.

6. 80th Congress House Report No. 304; United States v. Jones, D.C.E.D.Va., 141 F.Supp. 641.

7. 43 C.J.S. Infants § 97, p. 225; 31 Am. Jur. 786, § 6; People v. Lewis, 260 N.Y. 171, 183 N.E. 353, 86 A.L.R. 1001;

White v. Reid, D.C.D.C., 125 F.Supp. 647.

8. Rule 54(b) (5).

9. See Annotation: "Applicability of rules of evidence to juvenile delinquency proceeding." 43 A.L.R.2d 1128.

10. United States v. Webb, D.C.W.D.Okl., 112 F.Supp. 950; Suarez v. Wilkinson, D.C.M.D.Pa., 133 F.Supp. 38.