UNITED STATES of America,
Appellee,

v.

August COSTANZO, Appellant.

No. 11432.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 10, 1968.

Decided March 19, 1968.

James M. La Rossa, New York City, for appellant.

William S. McLean, Asst. U. S. Atty. (Robert H. Cowen, U. S. Atty., on brief), for appellee.

Before SOBELOFF and CRAVEN, Circuit Judges, and KELLAM, District Judge.

SOBELOFF, Circuit Judge:

Raising constitutional questions relating to the rights of confrontation and cross-examination and contesting the sufficiency of the evidence, the defendant Costanzo appeals his adjudication as a juvenile delinquent under 18 U.S.C. § 5032.

Costanzo, age 17, and one Meehan, age 21, both residents of Brooklyn, New York, were arrested in Florida for stealing a car in New York and transporting it to North Carolina. They were tried separately on the same day before District Judge Larkins. With Costanzo and his court-appointed lawyer in the court-

room, Meehan was tried as an adult for violating the Dyer Act, 18 U.S.C. § 2312. The Government produced eight witnesses, who were subject to cross-examination by Meehan's attorney. After the court denied a directed verdict of acquittal, the defense put on the stand the defendant Meehan, the appellant Costanzo, and Costanzo's father. The defense testimony was that the boys hitchhiked together from New York to Enfield, North Carolina, where they boarded a bus headed for Jacksonville, Florida. Both Meehan and Costanzo professed an inability to drive, and this was corroborated as to Costanzo by his father's testimony.

After Meehan's case was concluded, the judge took it under advisement and called Costanzo's case for trial. Costanzo's attorney, Hall, requested a short recess in light of some of the testimony in Meehan's case. The judge granted an hour and a half recess, which statisfied Hall. When court reconvened, the District Judge again informed Costanzo of the charge against him, explained the possible penalties, and presented him with the option of being tried as an adult offender or as a juvenile delinquent. After affirmatively indicating that he understood the nature of the charges and the maximum possible sentence, and after expressing satisfaction with the services of his attorney and the time allotted for trial preparation, Costanzo chose to be tried as a juvenile and pleaded not guilty.

The first item of evidence in the juvenile delinquency proceeding consisted of a stipulation entered into by counsel for both prosecution and defense that the testimony of two witnesses from New York would be that a certain vehicle owned by a rental agency had been leased to a Brooklyn resident who gave no one permission to drive it and who discovered that it was missing on October 25, 1966.

When informed by government counsel that the evidence against the juvenile would be identical to that previously offered against Meehan, the District

Judge declared: "I do not think it necessary to repetitiously hear each witness. I would suggest that the Government tender to attorney for the juvenile each of those witnesses [with the exception of the excused New Yorkers] that you have previously identified \* \* \* and it may be that Mr. Hall would have some questions to ask each of them on cross-examination. I do not want to deprive the juvenile of his right of confrontation of each witness."

Each remaining witness was then called and made to face the juvenile and his attorney. Although given the opportunity to cross-examine them, Hall declined but specifically adopted the earlier cross-examination of Meehan's court-appointed attorney. After each witness had been tendered and the opportunity to cross-examine had been declined as to each, the court asked the defendant, who is reputed to have an I.Q. of 68, whether he had any questions of the witnesses. He had none. Nor did he or his lawyer seek to introduce any evidence on Costanzo's behalf.

Upon the evidence in the two proceedings, the court sitting without a jury, as mandated in 18 U.S.C. § 5033 when a youth consents to be tried as a juvenile,[1] found the defendant to be a juvenile delinquent by violating the Dyer Act and committed him to a reformatory for the period of his minority and wisely recommended immediate psychiatric and physiological examinations.

 On this appeal, Costanzo contends that the District Court's unorthodox procedure violated his constitutional rights of confrontation and cross-examination and his privilege against self-incrimination. Although agreeing with the appellant that these safeguards attached in a criminal prosecution of this sort, see In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), we find no

merit in any of these constitutional arguments. There was no element of unfairness or any violation of constitutional standards in the procedure followed at trial. Costanzo, with the assistance of counsel, was afforded full opportunity to cross-examine the witnesses against him. Cf. Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). To the extent that the testimony in chief and on cross-examination adduced in Costanzo's and his lawyer's presence in Meehan's trial was not repeated, the right was clearly waived by acquiescence and participation without objection in the course suggested by the court. Nor was Costanzo's privilege against self-incrimination violated since he was not compelled to take the stand in the first trial and since his testimony was voluntarily offered with his lawyer's acquiescence, doubtless for the purpose of helping Costanzo's cause, as well as Meehan's.

Throughout the proceeding, the District Court acted meticulously to preserve for the defendant every right due him and made careful inquiry to insure that the time allowed for preparation was ample and that the defendant had been afforded every opportunity desired for consultation with counsel.

There remains, however, the question of the sufficiency of the evidence to support an adjudication of delinquency based on a violation of the Dyer Act. The principal stress of the Government's answer to the insufficiency argument is the contention that a lesser quantum of proof is required in a juvenile proceeding than in an adult criminal hearing. To support its proposition that a mere preponderance is enough to sustain an adjudication of delinquency, appellee cites United States v. Borders, 154 F.Supp. 214 (N.D. Ala.1957), aff'd, 256 F.2d 458 (5th Cir. 1958). In that case, the District Court,

1. Appellant has not challenged the constitutionality of requiring him to forgo a jury trial in order to be tried as a juvenile. We therefore do not adjudicate the issue. But see Nieves v. United States, 280 F.Supp. 994 (S.D.N.Y., March 5, 1968); Cf. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed. 2d 138 (April 8, 1968).

in sentencing a 12-year-old boy to incarceration for nine years for allegedly pulling a railroad switch, voiced a sentiment not uncommon before *Gault*, but unacceptable after *Gault:*

"A proceeding under the [Juvenile Delinquency] Act results in an adjudication of a status rather than the conviction of a crime with the stigma that attaches to such conviction. A trial under the Act is not a criminal trial and a strict application of criminal legal rules, procedural or substantive, will frustrate the purposes of the Act. Constitutional and statutory safeguards do not apply. \* \* \* To sustain an adjudication of delinquency, most authorities require the same amount and kind of proof as would be required in an ordinary civil action."

These ideas are at war with the philosophy painstakingly expounded in the Supreme Court's recent decision, In re *Gault*, supra, and can no longer guide us. *Gault* unequivocally rejects the reasoning typified in *Borders* and ineluctably requires a different conclusion. The court there held that the constitutional requirements regarding notice of charges, right to counsel, rights to confrontation and cross-examination and privilege against self-incrimination are "essential for the determination of delinquency, carrying with it the awesome prospect of incarceration in a state institution until the juvenile reaches the age of 21," In re Gault, supra, 387 U.S. at 36, 87 S.Ct. at 1448. The holding was premised upon the assumption that "a proceeding where the issue is whether the child will be found to be a 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution." Ibid.

■ Our precise question then is whether for purposes of the required quantum of evidence, no less than for notice, counsel, cross-examination, and the privilege against self-incrimination,

a federal juvenile proceeding which may lead to institutional commitment must be regarded as "criminal." We hold that it must be so regarded. No verbal manipulation or use of a benign label can convert a four-year commitment following conviction into a civil proceeding. See Gault, supra at 50, 87 S.Ct. 1428. The Government's burden in a juvenile case, therefore, is to prove all elements of the offense "beyond a reasonable doubt," just as in a prosecution against an adult.[2] We see a compelling similarity between the enumerated safeguards due a juvenile in as full measure as an adult and the requirement of proof beyond a reasonable doubt. In practical importance to a person charged with crime the insistence upon a high degree of proof ranks as high as any other protection; and if young and old are entitled to equal treatment in the one respect, we can think of no reason for tolerating an inequality in the other.

Far more in conformity, we think, with the Supreme Court's teaching than *Borders* is Jones v. Commonwealth, 185 Va. 335, 38 S.E.2d 444 (1946), wherein it is stated: "The judgment against a youth that he is delinquent is a serious reflection upon his character and habits. \* \* \* Guilt should be proven by evidence which leaves no reasonable doubt." In a case decided after *Gault*, the Illinois Supreme Court held: "[T]he language of that opinion [*Gault*] exhibits a spirit that transcends the specific issues there involved, and that, in view thereof, it would not be consonant with due process or equal protection to grant allegedly delinquent juveniles the same procedural rights that protect adults charged with crimes, while depriving these rights of their full efficacy by allowing a finding of delinquency upon a lesser standard of proof than that required to sustain a criminal conviction." In re Urbasek, 38 Ill.2d 535, 232 N.E.2d 716, 719 (1967). See also In re Rindell, 36 U.S.L.W. 2468 (RI Fam.Ct., Feb. 6, 1968).

---

2. But cf., In re Whittington, 13 Ohio App. 2d 11, 233 N.E.2d 333, cert. granted, 389 U.S. 819, 88 S.Ct. 112, 19 L.Ed.2d 69 (Oct. 10, 1967).

For nearly two centuries this higher standard of proof required in criminal cases has been recognized as a basic procedural safeguard and has been adopted by virtually every jurisdiction in this country. See IX, Wigmore on Evidence, § 2497 (3d ed., 1940, Supp.1964); see also McCormick, Evidence, § 321 (1954). The Supreme Court has termed the Government's obligation to prove every element of the offense beyond a reasonable doubt "a settled standard of the criminal law." Holland v. United States, 348 U.S. 121, 138, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). In Brinegar v. United States, 338 U.S. 160, 174, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949), the Court observed that, "Guilt in a criminal cause must be proved beyond a reasonable doubt," and explained that requirement in Speiser v. Randall, 357 U.S. 513, 525–526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1957), noting: "Where one party has at stake an interest of transcending value— as a criminal defendant his liberty—* * [the Government has the burden] of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of producing the evidence and convincing the factfinder of his guilt." A juvenile's liberty demands no less protection.

■■ The Court in *Gault*, which expressly found it unnecessary to decide the quantum of evidence question, had before it a state statute, not unique in this country, permitting a finding of delinquency even in the absence of the commission of a crime. Thus, a delinquent child may be one "who habitually so deports himself as to injure or endanger the morals or health of himself or others." Ariz.Rev.Stat. § 8–201, subsec. 6. The Federal Juvenile Statute is not nearly so broadly drawn. It specifically requires proof of the commission of a federal crime before a juvenile may be adjudged a delinquent subject to incarceration. 18 U.S.C. § 5031. It would appear a patent violation of due process and equal protection of the law[3] if a juvenile were found to have committed a crime on less evidence than would be required in the case of an adult, especially since the consequences of the adjudications are essentially the same. *Gault* makes abundantly clear that "under our Constitution, the condition of being a boy does not justify a kangaroo court." In re Gault, supra 387 U.S. at 28, 87 S.Ct. at 1444.

■ If we had to decide this case on the standard of proof issue tendered by the Government, we would be compelled to reverse, for the diluted measure proposed for juvenile cases is predicated upon a logic the cogency of which has been utterly devastated. However, the District Court, unlike the Government on appeal, correctly recognized that its obligation was to satisfy itself "beyond a reasonable doubt" that Costanzo violated the Dyer Act, and the court so stated the test in its finding. Our inquiry on review is somewhat more limited. We examine the record only to determine "whether there is substantial evidence, which taken in the light most favorable to the United States, tends to show that the defendant is guilty beyond a reasonable doubt." Bell v. United States, 185 F.2d 302, 310 (4th Cir. 1950).

■■ We turn then to the record to ascertain the sufficiency of the evidence introduced. The two elements comprising the substantive offense here charged are that the defendant (1) transported a stolen vehicle in interstate commerce, and (2) knew while so transporting that it was stolen. See Allison v. United States, 348 F.2d 152, 153 (10th Cir. 1965). Although there is abundant evidence to establish a theft of the car and its transportation in interstate commerce, the closer question is whether there is adequate support for the finding that Costanzo transported the car with knowledge

3. For an application of the equal protection guarantee to federal cases, see Bolling v. Sharpe, 347 U.S. 497, 500, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

that it was stolen. Generally, the requisite knowledge may be inferred by the finder of fact from proof of possession, which in this context is defined as actual control, dominion or authority. See *Allison*, supra at 153.

▇ Possession—and its inferential by-product, knowledge—may be proved circumstantially. The evidence, taken in the light most favorable to the Government, establishes the following: The leased car was stolen in Brooklyn sometime after 7 p. m. on October 24, 1966, and before 7 a. m. on October 25. Costanzo lived in Brooklyn and on the morning of the 25th, without notifying his family, left home and headed for Florida. The stolen vehicle was spotted in the neighborhood of the Enfield, North Carolina, bus depot at about 9:15 p. m. that evening. At approximately 9:30 p. m. the defendant was seen buying a bus ticket in Enfield directly across the street from the parked car. The defendant and his cohort admit removing luggage from a vehicle parked across the street from the Enfield depot. A witness, who was unable to identify the boys, testified that he saw a young man removing baggage at about 9:15 p. m. on October 25 from the vehicle which was found abandoned at that spot and later determined to be stolen. Finally, and most importantly, defendant's fingerprint was found on the rearview mirror of the stolen car. Although the conclusion is not compelled, the trier of fact would be justified in inferring that the only person who touched or adjusted the rear view mirror was the car's driver. From this he could fairly find that Costanzo drove the car and hence was in possession of it.

▇ Taken in its entirety, this evidence reasonably supports the inference that Costanzo transported the stolen vehicle in interstate commerce with knowledge that it was stolen. Since the evidence rationally sustains the court's finding of guilt beyond a reasonable doubt, the adjudication of juvenile delinquency is

Affirmed.