**UNITED STATES of America,
Appellee,**

v.

**Woodrow YOKUM, Appellant.**

No. 12740.

United States Court of Appeals
Fourth Circuit.

Argued June 10, 1969.

Decided Oct. 16, 1969.

Bonn Brown and Milford L. Gibson, Elkins, W. Va., for appellant.

John H. Kamlowsky, Wheeling, W. Va., Richard E. Reilly, and Leslie D. Lucas, Jr., Philippi, W. Va., for appellee.

Before BOREMAN, BRYAN, and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

Defendant,·Woodrow Yokum, was convicted on 10 counts of an 11 count indictment charging him with interstate transportation of stolen motor vehicles, 18 U.S.C. § 2312; unlawful sale of property stolen from the United States, 18 U.S.C. § 641; and transportation of property obtained by fraud from the U.S., 18 U.S.C. § 2314. He was sentenced to 3 years on each of 6 counts and to 4 years on each of 4 counts—the sentences to run concurrently. We reverse his conviction on count 3 and affirm on the remaining nine counts.

Yokum was Highway Supervisor for the West Virginia State Road Commission. In this capacity he obtained surplus federal property for the state road commission. The proper procedure for obtaining such property was for the West Virginia State Road Commission to ask the Bureau of Public Roads at Hagers-

254

town, Maryland, an agency of the United States, to order the surplus equipment for the state agency. If the Bureau determined that the state agency was eligible for the surplus equipment requested, the Bureau would prepare multiple copies of Standard Form 122. One would be sent to the appropriate regional office of the General Services Administration, which shared responsibility for distribution of surplus property. Copies would also be sent to the state agency, which would then send or take Form 122 to the appropriate regional GSA office. GSA would then, after resolving priority conflicts between the state agency and any federal agency interested in acquiring the property, note its approval on the form. Having obtained endorsement from both the Bureau of Public Roads and GSA, the state agency would then take the Form 122 to the federal agency holding the surplus property. There, by another procedure not relevant here, the property would be released to the state. At this point the state agency would, on the Form 122 sent them by the Bureau of Public Roads, add an endorsement to the effect that the requested equipment had been received and then return the form to the Bureau of Public Roads at Hagerstown, Maryland. Then the Bureau of Public Roads would bill the state agency for the equipment received. During the years 1964 through 1967 the Bureau of Public Roads received 170 requests for surplus property from the West Virginia State Road Commission; these requests were processed by it according to the procedure outlined above.

Yokum apparently discovered that there was no cross-check between GSA and the Bureau of Public Roads. By omitting the Bureau of Public Roads from the requisitioning procedure he got property and avoided having West Virginia billed for it. GSA sent no bills, as billing was the responsibility of the Bureau of Public Roads at Hagerstown, Maryland. To obtain the property involved in eight counts of the indictment, Yokum caused 122 Forms to be filled out listing the ordering agency as the "U.S.

Bureau of Public Roads" at P. O. Box 410, Buckhannon, West Virginia. There is no such agency, and the address given is that of Yokum's office at the State Road Commission. In the blank provided on Form 122 for a signature indicating approval by the ordering agency Yokum signed his name listing his title as "Hiway Supervisor." The proper authority to approve such requests was the Bureau of Public Roads at Hagerstown, Maryland. Yokum was not one of its employees, and that agency had no agent with the title "Hiway Supervisor."

Yokum questions the sufficiency of the evidence to sustain his convictions. In six counts of the indictment he was charged with interstate transportation of stolen motor vehicles in violation of 18 U.S.C.A. § 2312. Considering the evidence in the light most favorable to the government, as we must, United States v. Costanzo, 395 F.2d 441, 445 (4th Cir. 1968), we find it sufficient to sustain these convictions.

In all six of these counts the vehicles were obtained by Forms 122 bearing Yokum's signature specifying the fictitious "U. S. Bureau of Public Roads" as the ordering agency. There was evidence that the State Road Commission received none of the vehicles. The title source documents on all but one of the six were conspicuously absent from the files of the West Virginia Department of Motor Vehicles. Two of them were titled in Yokum's name, one in the name of his wife's first cousin, two in the names of his friends, and one, a fire truck, was loaned by Yokum to a fire department in his home town. We think this evidence was sufficient to establish that the vehicles were stolen and that Yokum had knowledge that they were stolen. The evidence further tended to show that all six of the vehicles were taken across state lines by Yokum or at his direction. More is not needed to sustain these convictions. United States v. Costanzo, *supra*; Scott v. United States, 255 F.2d 18 (4th Cir. 1958).

■ One count of the indictment charged Yokum with knowingly transporting stolen property with a value of more than $5,000 in interstate commerce in violations of 18 U.S.C.A. § 2314. The property, 1,000 pairs of binoculars, was found on a farm in West Virginia belonging to Yokum's uncle. Evidence sufficient to sustain the conviction, Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), was that the binoculars were obtained by a Form. 122, which Yokum caused to be executed, and which bore his signature signifying approval by the nonexistent "U. S. Bureau of Public Roads," and further that the binoculars were transported across state lines by State Road Commission employees at Yokum's direction. The State Road Commission had no record of ever having received the binoculars, which were valued at $165 per pair.

■ Yokum was charged with three counts involving violations of 18 U.S.C.A. § 641. The statute proscribes (1) the sale of property (2) belonging to the United States (3) without authority (4) knowing at the time of the sale that the property belonged to the United States. Violation of the statute is made a felony if the property is valued over $100. See Souza v. United States, 304 F.2d 274 (9th Cir. 1962). Evidence sufficient to sustain the first of these three counts was that a 1962 Chrysler Imperial was obtained by Yokum via a Form 122 which designated the fictitious "U. S. Bureau of Public Roads" as the acquiring agency, and, in addition that he sold the car to a Beverly, West Virginia, used auto dealer for $600.

The evidence as to the second count (count No. 3 of the indictment), considered in the light most favorable to the government, tends to show that a 1953 International Wrecker Truck was obtained by Yokum on a legitimate Form 122, that the title was released by the government to the State Road Commission, and that the government was paid for the truck. The 122 Form did contain a discrepancy, in that it described the truck as a dump truck rather than as a wrecker. The discrepancy probably originated in Yokum's request to the Bureau of Public Roads for the truck. However, the evidence, particularly the fact that the serial numbers and the Marine Corps numbers identifying the vehicle were correctly recorded on all of the papers and forms passing between the offices of the various federal agencies, tends to show that title to the truck passed to the state and that the federal government received its due. We are not unaware that the evidence also tended to show that title to the truck somehow came to Yokum, and that he sold the truck to a West Virginia body shop and kept the proceeds. Yokum may have cheated West Virginia. An essential element of the offense, however, is that the property sold was the property of the United States, see Souza v. United States, supra, and that element was not established. We reverse Yokum's conviction on count 3.

Finally, Yokum was charged with the sale of a 1951 Ward La France fire truck in violation of 18 U.S.C.A. § 641. The government produced evidence consisting of various inter-agency form communications between the Capitol Wing of the Civil Air Patrol and the Property Disposal Officer at Ft. Belvoir, Virginia. The forms show that this truck was authorized to be stripped of its useable equipment and that the remains were sold for scrap. However, evidence was also produced showing that a Ward La France fire truck with the same serial number and the same engine number titled as a 1957 model was sold by Yokum for $5,000 to a fire department near his home. There was also evidence that the truck was shipped to the Civil Air Patrol "attention Col. Woody Yokum" by the government contractor who had reported it as surplus property. Furthermore, the United States Government Certificate of Release issued on the fire truck, the equivalent of a certificate of title, bore the same certificate number as one of ten of such certificates obtained by Yokum from the Property Disposal Officer at Ft. Belvoir, Virginia. We think there

was sufficient evidence to sustain this conviction.

We have carefully considered Yokum's other contentions of error and find them to be without merit.

Affirmed as to nine counts. Reversed as to count 3.