UNITED STATES of America,
Appellee,

v.

Fred Lamont BOONE, Appellant.

No. 72-1327.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1972.

Decided Dec. 27, 1972.

Edward R. Slaughter, Jr., Charlottesville, Va. (Court-appointed counsel), [McGuire, Woods & Battle, Richmond, Va., on brief], for appellant.

James G. Welsh, Asst. U. S. Atty., for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and RUSSELL, Circuit Judges.

BOREMAN, Senior Circuit Judge:

Appellant, Fred Lamont Boone, was convicted on six counts of transporting or causing to be transported, with unlawful and fraudulent intent and in interstate commerce, fraudulently made or forged securities in violation of Title 18 U.S.C. §§ 2314 and 2.[1] Boone's principal claim of error is that the evidence was insufficient to permit a finding by the jury that Boone knew the checks which he cashed and caused to be transported were forgeries, such knowledge being one of the essential elements of the crime.

Boone had been tried earlier on the same charges under a seven-count indictment but a mistrial was declared because of faulty jury selection. At the same time the court directed a verdict of acquittal on count No. 6 because of insufficient evidence of interstate transportation. Thus, at the second trial the charges in counts Nos. 1 through 5 and count No. 7 of the original indictment were involved.

This criminal prosecution sprang from the negotiation by Boone of seven forged and falsely made checks at Charlottesville, Virginia, and Lynchburg, Virginia, during the first few days of June 1970. Five of the checks were negotiated on approximately June 3, 1970, at Charlottesville. The remaining two checks were negotiated two days later, approximately sixty-five miles away, at Lynchburg. All of the checks are of the same size, character and appearance. All bear the same printed nonmagnetic ink interbank routing transmittal number which was shown to be false; all are purportedly drawn on the Chase Manhattan Bank, N. A. of New York City; all are purportedly checks of "Bache and

---

1. 18 U.S.C. § 2314 reads in pertinent part:

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities . . . ., knowing the same to have been falsely made, forged, altered, or counterfeited; . . .

Shall be fined not more than . . . ., or imprisoned not more than . . . . . 18 U.S.C. § 2(b) provides in pertinent part:

Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Company, Inc.," 36 Wall Street, New York City; each contains a dollar amount figure obviously imprinted by means of a mechanical checkwriting device; each contains a typewritten entry showing the name of an individual as payee.

Bache and Co., Incorporated, a company with a name quite similar to that of the purported maker of the checks, was located at 36 Wall Street, New York City, at the time these checks were passed. The name of the purported maker imprinted on each check is incorrect; all seven indicate the business of the maker to be "Investments," whereas that company's regular checks contain no such indication; all seven fail to identify in detail the appropriate Chase Manhattan office where the account of Bache was supposedly located; all of the checks whereon legible account numbers remain do not disclose a proper and authentic number; and on the face of each of the checks where a signature remains legible the signature is that of an individual who is unauthorized by the company purporting to be the maker. As one of the employees of Bache and Company, Incorporated, testified, all seven checks were bogus and not, in fact, checks of his employer.

All of the checks are similar in that they were made in either of two amounts. Four of the five cashed at Charlottesville were for $85 and the remaining three were for $145. Each check was cashed at a bank by a person employing essentially the same plan of operation. The man negotiating the checks went to a bank teller, endorsed the check, gave a fictitious local address and, upon inquiry, stated that he maintained a savings account at the bank. He then left the bank with the cash proceeds. Each check was drawn to the order of a different payee, shown by the evidence to be a fictitious person. Boone was identified as the writer of the endorsement of the name of the payee on each of the checks upon a comparison of each handwritten endorsement and Boone's handwriting appearing in parole files maintained in the United States Probation Office for the District of Maryland.[2] Additionally, Boone's fingerprints were found on five of the checks. At Charlottesville the same address, shown to be fictitious, was given by the endorser as the address of five of the different named payees and at Lynchburg two fictitious addresses were given by the endorser.

■ There is no direct evidence that Boone completed the face of the checks. It has been held that evidence of the forgery of an endorsement, standing alone, is insufficient to support a charge of a violation of 18 U.S.C. § 2314, since knowledge of the bogus nature of the security is an essential element of the crime.[3]

It was conclusively shown by the evidence that six of the seven checks in question were transported in interstate commerce. However, there is no evidence in this case, as in other cases arising under § 2314, that conflicting explanations were given by the defendant as to his possession and endorsement,[4] that direct testimony indicated that the defendant had seen the checks in blank form prior to receiving them from one he knew not to be the maker,[5] or that the defendant possessed identification cards to match the fictitious payees of the forged instruments.[6] In Pauldino v. United States, *supra*, 379 F.2d 170, the defendant had been convicted in the district court for passing a single check on which he had forged the endorsement but the conviction was reversed on ap-

---

2. Boone had refused to furnish exemplars of his handwriting.

3. Pauldino v. United States, 379 F.2d 170, 172 (10 Cir. 1967); Streett v. United States, 331 F.2d 151, 157 (8 Cir. 1964).

4. United States v. May, 430 F.2d 715 (6 Cir. 1970).

5. Cloud v. United States, 361 F.2d 627 (8 Cir. 1966).

6. United States v. Davis, 434 F.2d 1108 (8 Cir. 1970).

peal because the only evidence of guilty knowledge that the check was forged was the defendant's forged endorsement. Boone contends here that passing only six checks is insufficient evidence of his knowledge that the instruments were forged and cites United States v. Braverman, 376 F.2d 249 (2 Cir. 1967), as supporting his contention. In *Braverman* the court considered convictions based on passing a large number of forged money orders although only six violations of § 2314 were charged in the indictment. In upholding the convictions the court stated:

> Here there was a need for the government to introduce evidence of intent (i. e., knowledge, on Braverman's part, that the money orders were counterfeit). The mere act of cashing one counterfeit money order, or possibly even six, might contain little to support the necessary proposition that the individual who cashed the money orders knew they were counterfeit. On the other hand, the likelihood that the one who handles 39 counterfeit money orders worth some $9,000.00 within a short period of time knows the nature of the instruments he is cashing is substantially greater. The trial court acted properly in permitting the government to buttress intent by means of the contemporaneous similar acts. (376 F.2d at 252.)

We conclude that Boone's reliance on *Braverman, supra,* is misplaced. He argues that *Braverman* stands for the proposition, at least by implication, that evidence in connection with the passing of six forged money orders, or as in this case seven checks, is insufficient to show guilty knowledge of the forgery of the securities. We hold that the evidence of Boone's false endorsement may be taken into consideration with any additional evidence from which the trier of fact could reasonably infer Boone's knowledge that the checks were forged.

In McGee v. United States, 402 F.2d 434 (10 Cir. 1968), the court said:

> Evidence of the forging of an endorsement is of no significance only in the sense that in and of itself it does not constitute a violation of § 2314. Nevertheless, such conduct can be viewed as circumstantial evidence tending, when taken with other evidence, to demonstrate the requisite guilty knowledge. (402 F.2d at 437.)

There was proof in the instant case, in addition to the forged endorsements, that the defendant, obviously following a pattern or scheme, cashed seven bogus checks within three days; in so doing he used seven different false names; he used three different false addresses; he told the various bank tellers that he had a savings account when presenting each check for cashing; all the checks were of the same size and appearance; four were for the same amount, $85, and three were for $145; all were forgeries.

■ The evidence was clearly sufficient from which the jury could draw the necessary inference of Boone's knowledge that the checks negotiated by him were, in fact, forgeries. United States v. Spencer, 439 F.2d 1047, 1049 (2 Cir. 1971).

■ Boone assigns as error the admission into evidence of the check which was the subject of count No. 6 which was dismissed for lack of proof of transportation in interstate commerce. This was one of the series of checks cashed by Boone at or about the same time he was going from bank to bank and cashing the other checks hereinbefore mentioned and described. We find no error. United States v. Braverman, *supra,* 376 F.2d 249 (2 Cir. 1967).

Boone assigns numerous other errors which we have considered and which we find to be without merit.

Affirmed.