962 F.2d 8
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Edward P. HAWLEY, Defendant-Appellant.
 No. 91-5371.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 6, 1992
Decided: May 14, 1992
 
 Before RUSSELL, Circuit Judge, WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation, and BLATT, Senior United States District Judge for the District of South Carolina, sitting by designation.
 Argued: Thomas Norman Cochran, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant.
 Robert Breckenridge, II, Special Assistant United States Attorney, Office of The Staff Judge Advocate, Camp Lejeune, North Carolina, for Appellee.
 On Brief: Margaret Person Currin, United States Attorney, Raleigh, North Carolina, for Appellee.
 PER CURIAM:
 
 
 1
 Edward P. Hawley was charged with four counts of unauthorized sale and disposal of government property in violation of 18 U.S.C. § 641. On June 6, 1991, a jury convicted Hawley on one count which alleged that on August 27, 1990, the defendant sold, without authorization, government property consisting of ten cases of MRE's (meals ready to eat) and one camouflage net.[1] Hawley is challenging his conviction in this appeal. Finding no reversible error, we affirm the district court's judgment.
 
 
 2
 The defendant first contends that the government presented no evidence that the items were, at the time of the sale, property belonging to the United States, or that the defendant specifically intended to sell the property knowing that it belonged to the government.
 
 
 3
 The evidence presented during the trial is related here in the light most favorable to the government. See Glasser v. United States, 315 U.S. 60, 80 (1942). During the summer of 1989, the Federal Bureau of Investigation (FBI) and the Naval Investigative Service (NIS) began a joint undercover operation to target the theft and unauthorized sale of government property in certain areas, including the area surrounding the U.S. Marine Corps Base, Camp Lejeune, North Carolina. As a part of this operation, the government opened a military surplus store. Using video and audio equipment, the store recorded its purchases of items to be sold. On four occasions over a four month period, the defendant sold items to the undercover operatives at the store. At trial, the government presented the testimony of FBI Special Agent Sams, who described the sale of the property by the defendant; also, the government presented another witness, Captain Herman H.
 
 
 4
 Giles, Jr., who testified regarding military requisition and distribution procedures. Captain Giles explained that items were assigned a National Stock Number (NSN), which was similar to a part number. In addition, another witness, Michael McGonigle, of the Defense Personnel Support Center, an arm of the Defense Logistics Agency (DLA), indicated that the DLA bought all items that were commonly used by the armed services through bids to manufacture these items for military use. A DLA number identified a contractor with a particular item. Mr. McGonigle further testified that if an item was marked with a DLA number, it meant the item was produced pursuant to a government contract, and that a contractor, desiring to sell to a civilian an item manufactured pursuant to a government contract, was required to remove the numbers marked on the item.
 
 
 5
 Captain Giles testified that the MRE's were produced pursuant to a government contract and that unused MRE's were required to be returned to supply. Another witness, Sergeant Jonathan Beatty, confirmed that MRE's not consumed were returned to supply. Lonnie Brinson, whose department was responsible for selling used military equipment to the civilian sector, testified that MRE's could not be sold. If MRE's were not consumed, they were destroyed. Additionally, Captain Giles testified about the markings on the netting involved herein and stated that, due to the unique nature of the netting, such netting was unlikely to be found in the open market.
 
 
 6
 Finally, the jury was presented with the testimony of NIS Special Agent Charles T. Coyle, III, and FBI Special Agent Stephen T. Smith. Agent Coyle, who interviewed the defendant at the time of his arrest, stated that the defendant told him that the MRE's were found in a classroom at Camp Lejeune and that the netting was found in the "field"; Agent Coyle, in earlier testimony, indicated that the defendant had explained "the field" as "during field operations, field exercises". J.A. at 256. Captain Giles explained that property recovered in the field at Camp Lejeune belongs to the government and that any gear that is recovered in the field by a marine must be returned to the marine's particular supply unit. J.A. at 230. Agent Coyle also testified that the defendant indicated that he was going to use the netting to cover a hunting stand, and that the defendant admitted he knew he was selling government property and knew that such conduct was wrong.
 
 
 7
 Special Agent Smith, who was present with Agent Coyle at the time of the defendant's interview after arrest, and who later sat in the back of a vehicle with the defendant after a court appearance, stated that the defendant admitted his conduct was wrong and was remorseful about what he had done. Agent Smith also testified that the defendant claimed that on routine exercises as a marine, he had picked up gear in the field, and that he kept the gear for himself and had decided to sell it. The defendant also admitted, according to Agent Smith, that he had given false names to the undercover agents at the store. Other evidence was presented at trial that the defendant gave the undercover operatives false information regarding his occupation, his residence, and how he acquired the property at issue herein.
 
 
 8
 In order to sustain a conviction under 18 U.S.C.s 641, the government must prove beyond a reasonable doubt that the defendant, without authority, knowingly sold property belonging to the government. See United States v. Yokum, 417 F.2d 253 (4th Cir. 1969). Viewing the evidence here in a light most favorable to the government, sufficient evidence has been presented from which any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. Glasser, 315 U.S. at 80.
 
 
 9
 Over defendant's objection, circumstantial evidence of guilt was properly admitted at the trial, and the court charged that the jury could consider both direct and circumstantial evidence. The conflict between the defendant's trial testimony and the testimony of the agents is a classic example of the type of credibility question which is properly submitted to a jury for resolution. Moreover, the fact that the defendant gave incorrect information about his occupation, his residence, and his name, as well as the agents' testimony regarding the defendant's incriminating admissions, was properly presented to the jury for its consideration as to the defendant's guilty knowledge and his participation in the illegal sales. See, e.g., United States v. Boone, 470 F.2d 908 (4th Cir. 1972); United States v. Vogt, 910 F.2d 1184 (4th Cir. 1990); see also United States v. Cruz, No. 90-5100, slip op. at 9 (4th Cir. Mar. 12, 1992) (Westlaw 1992 WL 46042) ("use of false identification in the conduct of criminal activities can be considered as evidence of knowing involvement"). Accordingly, the district court did not err in its treatment of these issues.
 
 
 10
 The defendant next assigns error to the trial court's abandonment instruction to the jury. The court instructed the jury that the government could relinquish or abandon its right of ownership in its property, and, furthermore, that the defendant could not be found guilty of selling abandoned property. However, the trial court added that there could be no abandonment of property found on a government installation. It is the latter part of this charge to which the defendant objected. Since the defendant at trial claimed either that he found the property involved outside the boundaries of Camp Lejeune, or that this property belonged to him and he could legally sell it, and since no evidence of abandonment of the property was introduced by either party at trial, such an instruction was meaningless and not warranted by the evidence. See, e.g., United States v. Hicks, 748 F.2d 854 (4th Cir. 1984) (wherein the court stated that a defendant is entitled to an instruction on any theory of defense for which there is a foundation in the evidence). Any error in giving this instruction was clearly harmless as it did not conflict with the defendant's theory of the case or his defense. The instruction did not so infect the entire trial that it deprived the defendant of a substantial right. See United States v. Fowler, 932 F.2d 306 (4th Cir. 1991), citing Cupp v. Naughten, 414 U.S. 141 (1973); see also Fed. R. Crim. P. 52(a).
 
 
 11
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 The jury returned verdicts of not guilty on two of the four counts, and the court declared a mistrial as to the remaining count