STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. MARVIN DANCYGER, DEFENDANT-RESPONDENT.

Argued January 6, 1959—Decided February 2, 1959.

*Mr. V. Seeley Romaine* argued the cause for plaintiff-appellant (*Mr. Charles V. Webb, Jr.,* Essex County Prosecutor, attorney; *Mr. Myron W. Kronisch* and *Mr. V. Seeley Romaine* on the brief).

*Mr. Samuel Allcorn, Jr.,* argued the cause for defendant-respondent.

The opinion of the court was delivered by

PROCTOR, J. The defendant was tried in the Essex County Court upon an indictment charging him with (1) willfully entering the room of Estelle Grossbardt with intent to steal in violation of *N. J. S. A.* 2A:94–1, and (2) stealing her platinum diamond ring valued at $2,750 in violation of *N. J. S. A.* 2A:119–2. The jury was unable to reach a verdict on the first count and as to that count a mistrial was declared. The jury rendered a verdict of guilty on the second count and judgment was entered thereon. On defendant's appeal the Appellate Division reversed the conviction, one judge dissenting. 51 *N. J. Super.* 150 (1958). The State appeals from that judgment. *N. J. Const., Art.* VI, § 5, *par.* 1; *R. R.* 1:2–1(*b*).

The State proved at the trial that Mrs. Estelle Grossbardt, accompanied by her two children, ten and two years of age, and a governess, spent the summer of 1956 at the Goldman Hotel in West Orange, New Jersey. Her husband joined them on weekends. Mrs. Grossbardt, her children and her husband occupied the same room while the governess occupied a separate room. Mrs. Grossbardt's room was located on the ground floor of the hotel. Access to the room was

off a central corridor which in one direction led to the main lobby at the front of the hotel, and in the other direction to a side entrance door opening into the parking lot and in the rear of the corridor to a door opening into the swimming pool area. Because it was necessary to provide her children with access to the room the door was always left unlocked except when Mrs. Grossbardt retired for the night. She kept her jewelry in an unlocked jewel box on the top of the dresser in her room.

On Sunday evening, July 29, 1956, Mrs. Grossbardt attended a social function at the hotel and wore some of her jewelry, including the ring mentioned in the indictment and a gold charm bracelet. She returned to her room sometime after midnight, placed the jewelry in her jewel box and retired. The following day, July 30, Mrs. Grossbardt left the room at about 9 A. M., and her husband remained there until about 11 A. M., when he returned to the city, leaving the room unlocked. Mrs. Grossbardt had no further occasion to open her jewel box until 7 P. M. on Tuesday, July 31. At that time she discovered that her diamond ring, her charm bracelet and other articles of her jewelry were missing. She immediately notified the proprietors of the hotel and they in turn notified the West Orange police. The police made an investigation the same evening and sent out a teletype message containing a description of the missing jewelry. The missing charm bracelet was pawned at the Lincoln Square Pawn Brokers in New York City on Monday, July 30, 1956, between 3:30 P. M. and 4:30 P. M. The pawn broker's slip showed that the bracelet was pawned for $50 in the name of "Max Doreshorne." The State's handwriting expert identified the handwriting on the pawn slip as that of the defendant. His opinion was based upon a comparison of admittedly genuine signatures of the defendant with the handwriting on the pawn slip.

The defendant was employed from November 1955 up to the time of the trial as a salesman by a New York City company engaged in the wholesaling of pipes and smokers'

articles. His duties were to call on retailers and solicit orders. On July 30, 1956, the date of the alleged theft, the defendant had taken orders from three customers in Newark and one in East Orange. The Goldman Hotel is within a half-hour's driving distance from the shops of the customers. There was no proof as to the time or times of day when these orders were taken.

On Tuesday, July 31, 1956, at about 1 P. M., the defendant called at a jewelry store in Poughkeepsie, New York, owned by Morris White and his wife Rae. He showed Mrs. White a platinum diamond ring and told her that he found it in the street in Poughkeepsie and asked whether the stone was "glass or is it a diamond?" Mrs. White took the ring to the back of the store and handed it to her husband. Mr. White became suspicious and instructed her to call the police. The defendant told the police officers that he was a salesman and had been calling on his customers in Poughkeepsie; that he had found the ring that morning in the gutter of the street in that city and had taken it to White's jewelry store to determine whether it was of any value. The ring was retained by the police and later identified by Mrs. Grossbardt. This is the ring mentioned in the indictment.

Maclyn Goldman, one of the proprietors of the hotel, testified that shortly after the theft he identified a person in a photograph shown him by the police as a man who had been at the hotel on several occasions prior to the date of the alleged theft. It was stipulated that the person in this photograph was the defendant. While Goldman was unable to conclude with certainty after looking at the defendant in the courtroom that the defendant had visited the hotel, he was definite in his statement that he had seen the person in the photograph at the hotel. He testified on cross-examination:

"I cannot say that Mr. Dancyger was the man there, but I do say that the person on the photograph that was shown to me was definitely there on several occasions before, as I have heretofore stated.

Q. And since you got the picture you have looked at Mr. Dancyger? A. I have looked at him several times.

Q. And you are not certain? A. I am not certain he is the man that I saw, but he bears a very strong resemblance to the man I saw."

Herbert Fine, the hotel's social director, testified to having seen defendant in the hotel lobby sometime after 8 P. M. on a Saturday evening between July 15 and July 30, 1956. On weekends during the summer months there were often as many as 600 to 650 guests at the hotel and between 150 and 170 employees.

At the conclusion of the State's case the defendant moved to dismiss both counts of the indictment. The court denied the motions ruling that "while the case is purely circumstantial, a *prima facie* case has been established on both counts."

The defendant did not take the stand. The only witness called on his behalf was his wife. She testified that during the months of June and July 1956 the defendant spent every Saturday evening with her and had never spent a Saturday evening during this period at the Goldman Hotel. Upon the completion of her testimony, the defendant rested and moved for a judgment of acquittal, which motion was denied. The court charged the jury that the case was one founded in circumstantial evidence and instructed them that they could return a verdict of guilty or not guilty on both counts, or guilty on one and not guilty on the other. In concluding the court stated:

"I may say in connection with the latter part of what I have just stated to you—I say this purely by way of comment, which you are not required to accept if you think it is inappropriate—it does seem that under the facts of this case the verdict should be either guilty on both counts or not guilty on both counts."

As mentioned above, the jury could not agree on the first count (entering with intent to steal), and as to this count a mistrial was declared. The jury returned a verdict of guilty on the second count (larceny).

The defendant's motion for a new trial was denied and from the judgment of conviction the defendant appealed to the Appellate Division of the Superior Court. The defendant urged the following grounds for reversal: (1) The evidence does not support the larceny charge and therefore the motions for judgment of acquittal should have been granted; (2) the trial court's charge with respect to defendant's failure to testify was erroneous; (3) he was prejudiced by the improper admission of evidence and the improper remarks of jeweler White who testified for the State; and (4) the verdict was inconsistent and a compromise verdict.

The majority of the Appellate Division reversed the judgment of conviction and held that the proofs "did not exclude a reasonable hypothesis of innocence of the theft charge, so that the trial court should have granted defendant's motions for acquittal." Because of this disposition of the case the majority deemed it unnecessary to discuss the other points raised by the defendant. On its appeal to this court the State contends that the evidence presented was sufficient for the jury to find beyond a reasonable doubt that the defendant was guilty of larceny.

The evidence presented by the State was wholly circumstantial. However, if this evidence is of sufficient quality to convince a jury beyond a reasonable doubt of the defendant's guilt, it does not matter that it is circumstantial. *State v. Donohue,* 2 *N. J.* 381, 389 (1949). It has often been said that circumstantial evidence is not only sufficient but may also be "more certain, satisfying and persuasive than direct evidence." *State v. O'Connor,* 134 *N. J. L.* 536, 539 (*Sup. Ct.* 1946). Therefore, the question before the trial court at the close of the State's case was whether the evidence, viewed in its entirety and giving the State the benefit of all legitimate inferences therefrom, was such that the jury could properly find beyond a reasonable doubt that the defendant had stolen Mrs. Grossbardt's ring. See *State v. Goodman,* 9 *N. J.* 569, 581 (1952); *State v.*

*Rogers*, 19 *N. J.* 218, 232 (1955). The evidence at the close of the State's case permitted the jury to conclude that the ring had been stolen. The disappearance of property from the place where the owner put and kept it, and without the owner's knowledge and consent, is evidence of theft. 32 *Am. Jur., Larceny,* § 136, *p.* 147. The jury could have also concluded that the larcenous taking occurred sometime after 11 A. M. on Monday, July 30, and that the defendant pawned under an assumed name the charm bracelet, a part of the stolen jewelry, in New York City between 3:30 P. M. and 4:30 P. M. on the same day. The proofs further showed that the defendant was in possession of the stolen ring the following day in Poughkeepsie, New York. From this evidence the jury was entitled to find that the defendant was in exclusive possession of the stolen jewelry soon after it was taken.

 It is well established that the unexplained and exclusive possession of stolen property shortly after the theft justifies an inference that the possessor is the thief. 1 *Wharton, Criminal Evidence* (12th ed. 1955), § 135, *p.* 254; 3 *Underhill, Criminal Evidence* (5th ed. 1957), § 601; 9 *Wigmore, Evidence* (3d ed. 1940 and 1957 *Supp.*), § 2513, *p.* 417. See *State v. Lax,* 71 *N. J. L.* 386, 387 (*Sup. Ct.* 1904) ; *State v. Dunlap,* 103 *N. J. L.* 209 (*Sup. Ct.* 1927). The basis for such an inference is the improbability that the accused could have acquired the stolen property so soon after the theft unless he was the thief. Therefore, the shorter the period of time between the theft and possession the stronger this inference becomes. *Boehm v. United States,* 271 *F.* 454 (2 *Cir.* 1921) ; *Note,* 46 *Col. L. Rev.* 460 (1946). The inference .(that the possessor is the thief) is incompatible with any hypothesis of innocence of the crime charged, and if the State produces facts justifying such an inference, the issue must be submitted to the jury as that body may consider the inference to be the equivalent of direct evidence that the accused committed the theft. Note, *"Presumption of Larceny from the Unexplained*

Possession of Stolen Goods," 23 Va. L. Rev. 616 (1937). Cf. State v. Donohue, supra, 2 N. J. at pages 390–391. Even in those few jurisdictions where such possession standing alone is not sufficient to sustain a conviction, only slight corroborative evidence of other inculpatory circumstances is required. For example, the sale of stolen property under an assumed name has been held a circumstance which in addition to possession is sufficient. People v. Lang, 142 Cal. 482, 76 P. 232 (Sup. Ct. 1904); McCutcheon v. State, 140 Tex. Cr. R. 74, 143 S. W. 2d 611 (Cr. App. 1940).

█ In the present case the State's proofs showed that the defendant was present at the Goldman Hotel one or two weeks prior to the disappearance of the jewelry; that the defendant was in the vicinity on the day of the theft; and that the defendant pawned the stolen bracelet in New York City under an assumed name within a few hours after the theft in West Orange. No explanation was offered on behalf of the defendant as to the manner in which he came into possession of the charm bracelet which had been stolen along with the ring. Possession of part of the stolen property indicates the theft of the whole where the evidence shows that all of the property was taken at the same time and place. Bride v. State, 86 Tex. Cr. R. 535, 218 S. W. 762 (Cr. App. 1920). The jury could have concluded that the failure of the defendant to explain his possession of the charm bracelet to anyone at any time made implausible the defendant's explanation to the police in Poughkeepsie that he found the ring in that city.

█ In our opinion the above proofs clearly made the question of whether the defendant was guilty of larceny one for the determination of the jury and it was for them, rather than for the court, to decide whether the evidence was such as to satisfy them of defendant's guilt beyond a reasonable doubt. We think there was ample evidence, although circumstantial, from which the jury could find that the defendant was guilty of the crime charged.

The majority of the Appellate Division were of the opinion that the State's evidence did not destroy the "probable explanation" that the defendant was a "fence" rather than the actual thief. We cannot agree. In order to justify such an explanation it would be necessary to find somewhere in the chain of circumstantial evidence a fact or facts from which an inference could reasonably be drawn that the theft was committed by a person other than the defendant. There was no such evidence in the case and therefore the trial judge would not have been justified in concluding that there was a rational hypothesis that the defendant was a "fence" or receiver of stolen property. *Cf. State v. Shelbrick*, 33 *N. J. Super.* 7 (*App. Div.* 1954). *N. J. S.* 2A :139–1 provides that possession of stolen property within one year of the theft, if unaccounted for, shall be deemed sufficient evidence to justify a conviction of receiving stolen goods. The rebuttable presumption of guilt of receiving stolen goods, implicit in the statute, is for the benefit of the State where an indictment alleges that offense. *Cf. State v. Giordano*, 121 *N. J. L.* 469 (*Sup. Ct.* 1939). This statute has no application in a prosecution for larceny. Moreover, the trial judge in ruling on the motions for acquittal, and the jury in their consideration of the evidence, together with the legitimate inferences to be drawn therefrom, could have deemed it unlikely that a "fence" would exhibit his illicit wares to an established jewelry store for appraisal or attempt to dispose of them at a pawn shop; and that such conduct would be more characteristic of a thief anxious to dispose of his loot.

Having concluded that the trial court properly denied defendant's motions for acquittal, it is necessary for us to consider the additional grounds of error alleged by the defendant and not considered by the Appellate Division because of the contrary result which they reached on the initial question. The first of these alleged errors relates to the court's charge. As mentioned above the defendant did not take the stand. The court charged the jury as follows:

> "The defendant is at all times presumed to be innocent and the burden of proving his innocence is not upon him. He is not required to show he is innocent, and I charge you that it is the privilege of the defendant to testify or not, as he chooses. You are not at liberty to infer guilt from his failure to give evidence. However, where facts concerning the acts of the defendant are testified to which tend to prove his guilt and he by his oath can deny them, his failure to testify in his own behalf raises a strong presumption that he cannot truthfully deny those facts.
>
> The criterion is whether there are facts in evidence concerning the acts or conduct of the defendant, within his personal knowledge, which are inculpative or imputative in some degree of guilt, which fact he, by his oath, can deny."

At the conclusion of the charge, counsel for the defendant stated: "I take exception, for the record, to that portion of your charge wherein the defendant fails to take the stand." After the jury had retired, they sent a note to the trial judge requesting that portion of his charge relating to the "non-calling of the defendant to the stand." In response the court repeated that part of the charge quoted above.

Defendant contends that the present case was not a proper one in which to make any comment whatsoever on the defendant's failure to take the stand; that if given it should have been limited to inculpatory facts; and that the charge should have contained an explanation that the presumption is one that is permissive only.

This court has recently engaged in a comprehensive review of the problems involved in the formulation of an adequate charge in cases in which the accused fails to testify. *State v. Corby*, 28 *N. J.* 106 (1958). In discussing the nature of cases in which such a charge may be appropriate, Justice Francis stated:

> "The cases demonstrate that the rule is applicable when there is direct evidence of facts showing defendant's participation in the crime, or *where there is direct evidence of facts circumstantially implicating him.* * * * However, it has been said that where the inculpatory facts are purely circumstantial, comment on an accused's silence is improper. * * * It is difficult to envision a case where the proof adduced by the State would be sufficiently incriminating to

require the issue of guilt or innocence to be sent to the jury for determination and yet would not contain some such facts which he could deny of his personal knowledge. \* \* \* From an academic standpoint it may be sound to say that if the evidence is so wholly circumstantial as to admit only of a general denial of guilt by the defendant, the adverse implication should not be drawn. But as a practical matter, such a case is more supposititious than real, and care must be exercised so as not to deny the State the advantage of the charge where in justice it may be given." *Id.*, at *pages 118–119*. (Emphasis added)

In the present case there was testimony that the defendant was present at Goldman's Hotel prior to the date of the alleged theft. While in and of itself this fact does not directly implicate the defendant in the crime charged, when considered in conjunction with the other evidence before the jury, there are inculpatory inferences which the jury reasonably could draw. Also, and more significant, there was before the jury the unimpeached testimony of the handwriting expert. This evidence established the inculpatory facts that the defendant was in possession of the stolen jewelry within a few hours after its disappearance and that he pawned part of it under an assumed name. Whether or not the defendant signed the pawn slip and pawned the charm bracelet were facts within his personal knowledge which he could have disproved by his own oath as a witness if they were not true. *State v. Costa*, 11 *N. J.* 239, 253 (1953). The defendant's failure to deny the above facts circumstantially implicating him in the theft warranted the court in commenting on his failure to testify.

Defendant argues that it was error not to inform the jury that the presumption was merely a permissive inference which they might draw. However, the defendant's objection was a general attack on that portion of the charge dealing with his failure to testify. The objection related to the propriety in this case of charging anything at all on the subject, and in no wise suggested criticism of that part of the charge relating to "a strong presumption." Hence, the defendant can only prevail if that part of the charge

qualifies as plain error. *R. R.* 1:5–1(*a*). In *State v. Corby, supra,* we held that a charge similar to that quoted above did not constitute plain error. Our views expressed in that case are applicable here and we find from our examination of the record no such manifest injustice as would warrant a reversal of the conviction.

During the direct examination of the State's witness Maclyn Goldman, he was asked if he had ever seen the defendant before. He responded: "I don't know. I recall a picture was exhibited to me." The prosecution moved to strike everything after, "I don't know," but defendant objected and the answer was allowed to stand. The witness then testified that he had been shown a photograph —stipulated to be that of the defendant—and had identified the person in the photograph as having been at his hotel prior to the date of the theft. The State offered the photograph in evidence and it was received over the defendant's objection. All writing on the photograph was obliterated. The court cautioned the jury that it was to be considered "solely for the purpose of substantiating the testimony of Mr. Goldman, if in fact you find it does substantiate his testimony," and that no inferences were to be drawn from the fact that the photograph was in the possession of the police or that the writing thereon was obliterated. Defendant asserts that the introduction of the photograph was for the purpose of neutralizing the witness' testimony when he was unable to identify the defendant at the trial, and that as such the court should have informed the jury of the limited purpose for which such evidence is accepted. See *State v. Kysilka,* 85 *N. J. L.* 712, 714 (*E. & A.* 1913). We do not believe that the admission of the photograph must be so limited. It is clear that the State had no desire to neutralize the testimony of the witness but merely intended to have him identify the man in the photograph while under oath. The defendant did not object to the testimony and made no request to the court that it be limited in any manner. It was stipulated that the man was the defendant.

A witness may testify to a person's identity from a photograph. 2 *Wigmore, Evidence* § 660 (*3rd ed.* 1940). The photograph thus had definite probative force on the issue of identity. *Cf. State v. O'Leary,* 25 *N. J.* 104, 115 (1957). It is conceivable that the witness could identify the man in the photograph and not the defendant in the courtroom. At the time of the trial more than 15 months had elapsed since the defendant was allegedly seen by the witness at the hotel. Defendant's appearance in the observation of the witness may have changed during this period. In any case, the weight to be given to this identification is peculiarly the function of the jury. It was the defendant who objected to the striking of the witness' testimony which opened up the subject of the photograph. We see no error in its admission or in the court's refusal to limit its purpose to neutralization of this witness' testimony.

 While laying the foundation for the subsequent testimony of the handwriting expert, the State asked James Roberts, a detective with the West Orange police department, where he obtained certain specimens of the defendant's handwriting:

"Q. Did you turn anything over to Mr. Haring [the handwriting analyst] other than the documents that have been marked for identification? A. Yes, two photographic prints of three fingerprint cards bearing the signature of Marvin Dancyger.

Q. Where did you receive these from? A. New York City Police Department, the B.C.I."

Defendant raised no objection at the trial. However, counsel now asserts as plain error that the jury received the impression that the defendant had a criminal record and was thus prejudiced. The defendant was a resident of New York. There are any number of reasons other than the conviction of a crime why the police may come into possession of a person's finger prints. The cards were relevant for the purpose of an expert comparison of defendant's signatures thereon with the writing on the pawn slip. They were later admitted without objection, defendant's counsel

stipulating that they contained the defendant's signatures. The jury was expressly told by the court that the exhibit could not be used for any purpose other than the admitted signature of the defendant. In view of the above, the reference to their origin was not plain error requiring a reversal.

 Morris White, the Poughkeepsie jeweler, was called as a witness for the State. As he was leaving the witness stand he noticed that the ring, which he had just identified, had been left either on a table or railing in the courtroom. He gratuitously remarked: "They better take away the ring before it will be missing again." The trial judge did not hear the actual words spoken, but did admonish the witness that he was present only to answer questions and told him he could stay in the courtroom only if he behaved himself. The purport of White's remark is not clear. Perhaps he intended it as a jocular admonition against leaving a valuable ring in a public place. There was no objection or motion for a mistrial and we do not find that defendant was prejudiced by the remark.

 Finally, it is contended that the jury's verdict of guilty on the larceny count is inconsistent with its failure to reach a verdict on the entering with intent to steal count. Defendant alleges that this demonstrates that the result achieved by the jury was a compromise verdict and requires reversal. We cannot agree with this interpretation of the jury's verdict. They were expressly informed that they could find the defendant guilty or not guilty on one or both of the counts submitted to them. We need not decide whether in the circumstances of the present case a verdict of guilty on one count and not guilty on the other would be inconsistent, for the jury failed to return any verdict on one count. There is, therefore, nothing with which the guilty verdict may be inconsistent. Each count of the indictment related to a different substantive offense, each offense involving independent elements which the jury had to conclude existed before a verdict of guilty might be

rendered. The failure to return a verdict of guilty on the entering with intent to steal count is evidence only that one or more members of the jury could not conclude beyond a reasonable doubt that the State had proved all elements of that offense. The determination of guilt of the larceny is not repugnant.to the inability of the jury to agree as to the other charge. *State v. Janiec,* 20 *N. J. Super.* 471, 481 (*App. Div.* 1952). As we have already concluded that there was ample evidence to support the guilty verdict on the larceny count, there is no basis for concluding that the verdict represents a compromise. A verdict cannot be upset by speculation on such a matter. *Dunn v. United States,* 284 *U. S.* 390, 52 *S. Ct.* 189, 76 *L. Ed.* 356 (1932).

For the reasons set forth above, the judgment of the Appellate Division is reversed and the trial court's judgment of conviction of larceny is reinstated and affirmed.

WACHENFELD, J., concurring in result.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.