**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Leo ROBERTSON, Jr., Defendant-Appellant.**

**No. 26989.**

United States Court of Appeals
Fifth Circuit.

Nov. 7, 1969.

James H. White, III, Bradley, Arant, Rose & White, (Court-appointed) Birmingham, Ala., for defendant-appellant.

Robert Leo Robertson, Jr., pro se.

Macon L. Weaver, U. S. Atty., R. Macey Taylor, Melton L. Alexander, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before RIVES, COLEMAN, and MORGAN, Circuit Judges.

COLEMAN, Circuit Judge:

Robert Leo Robertson, Jr., was convicted on two counts of violating the Dyer Act, one under 18 U.S.C.A. § 2312 for interstate transportation of a stolen vehicle and the other under 18 U.S.C.A. § 2313 [1] for unlawful receipt and concealment of a stolen vehicle while such a vehicle was moving in interstate commerce.

The government prosecuted the case on the theory that appellant had such possession of the stolen vehicle as to make out a prima facie case under both 18 U.S.C.A. §§ 2312 and 2313. Appellant urges that the judgments against him should be reversed and judgment rendered in his favor, or in the alternative remanded for a new trial, on the grounds that: (1) the evidence viewed in the most favorable light to the government is insufficient to support the guilty verdicts; and (2) the lower court erred in its charge to the jury on the nature of possession necessary to support an inference of guilt.

We affirm the judgment of the District Court.

South Pittsburgh, Tennessee, is situated immediately north of Jackson County, Alabama. The latter county is located immediately west of Dade County, Georgia. At approximately 10 o'clock, a. m., March 16, 1968, Mrs. Paul Turner parked a white 1967 Cadillac (2-door Coupe DeVille) in front of her husband's store in South Pittsburgh. In anticipation of a trip to Florida, the car contained fishing, golf, and other recreational equipment. Within fifteen minutes the car had disappeared at the hands of parties unknown. At about 2 o'clock p. m., on the same day, an investigator for the sheriff's office saw a white Cadillac being driven on a Jackson County road. He met the car, which very nearly ran him off the road. He turned around and made an unsuccessful effort to overtake it. He knew the car was occupied by two individuals but could offer no further identification. He had previously been notified by a radio communication from another officer that there was a white Cadillac in the area. Although across the state line in Alabama, this sighting of a white Cadillac occurred about fifteen or twenty miles from South Pittsburgh.

Later that afternoon, the hour not specified, a deputy sheriff of Jackson County saw the Cadillac. Robert Leo Robertson, Jr. was riding on the front seat but the deputy could give no description of the individual under the wheel. The deputy did not know Robertson at that time but testified that he recognized him later when he ran into him at a store.

On April 23, 1968, the car was found concealed in the woods in the same general area of Jackson County. It then carried a Jackson County, Alabama, license tag, which obviously had been substituted for its Tennessee tag.

On August 20, 1968, an agent of the Federal Bureau of Investigation, on an interstate highway in north Georgia, arrested Robert Leo Robertson, Jr. for

1. Section 2312 reads:
 "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."
 Section 2313 reads:

 "Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

the offenses here involved. He was in an automobile with Hazel Hicks Long, of whom we shall hear more at a later point in this opinion. Robertson was fingerprinted, but after being given the *Miranda* warnings declined to make any statement other than to say that he knew nothing of the stolen Cadillac and had never been in the vehicle.

We now return to occurrences taking place in Jackson County, Alabama, on Saturday afternoon, March 16, 1968. After the deputy sheriff had seen the white Cadillac in which Robert Leo Robertson, Jr. was riding he encountered Hazel Hicks Long driving a 1960 blue Mercury station wagon. Upon trying to stop her, Hazel brought her car to a halt and fled into the woods. She was overtaken and arrested for a traffic violation. In the blue station wagon the deputy found the fishing tackle, golf clubs, and tire chains which were in the Cadillac when it was stolen that morning in South Pittsburgh.

At 4:05 p. m. (Alabama time), Robert Leo Robertson, Jr. was apprehended a few miles from his home community, but in Dade County, Georgia, for traffic violations, for which he spent the ensuing forty-three days in the Trenton, Georgia, jail.

Robert Leo Robertson, Sr., the father of the appellant, lived in the same general community in which the Cadillac was seen and later found, but he operated a cleaning and pressing business at Trenton.

There was testimony, however, that in the same general vicinity in Jackson County, Alabama, on March 16, 1968, Robert Leo Robertson, Jr. was living in a house with Hazel Hicks Long, who was caught with the goods from the stolen Cadillac.

When the Cadillac was found in the woods, near where it had been seen and unsuccessfully chased, an agent of the Federal Bureau of Investigation removed the rear view mirror and sent it to Washington. There, fingerprints from the right hand of an individual then unknown were found on the mirror, and photographed. When Robertson was fingerprinted in August it turned out that his were the fingerprints previously photographed on the rear view mirror.

One witness, Andy Hicks, testified that Robertson visited his home about 1:30 p. m. on March 16, 1968, driving a white Chevrolet Corvair. Andy, however, was the father of Hazel Hicks Long. He said he knew nothing of Robert Leo Robertson, Jr. living with his daughter in the house next to Mr. Goodson in the Bryant community. He did know that his daughter went with Robertson.

Upon this statement of facts, the crucial issue is whether the evidence, when viewed in a light most favorable to the prosecution, is sufficient to support the verdicts of guilty.

■ In a Dyer Act case, the government must prove that the car was stolen and that the accused, knowing it to have been stolen, transported it in interstate commerce, Moody v. United States, 5 Cir., 1967, 377 F.2d 175. To prove the requisite elements of transportation and guilty knowledge, the government relied, as already stated on the familiar proposition that unexplained possession of a recently stolen vehicle in another state is sufficient to make out a prima facie case under both § 2312 and § 2313 of 18 U.S.C.A. United States v. Reed, 5 Cir., 1969, 414 F.2d 435; Hale v. United States, 5 Cir., 1969, 410 F.2d 147; Barnes v. United States, 5 Cir., 1965, 341 F.2d 189; Barfield v. United States, 5 Cir., 1956, 229 F.2d 936.

Since this is a circumstantial evidence case, the inferences which the jury may reasonably draw from the evidence must not only be consistent with guilt, but also inconsistent with every reasonable hypothesis of innocence. Hale v. United States, supra, 410 F.2d 149 n. 3; Montoya v. United States, 5 Cir., 1968, 402 F.2d 847, 850; Vick v. United States,

5 Cir., 1964, 216 F.2d 228, 232. In reviewing a district court's refusal to direct a verdict of acquittal, this Court can reverse a jury verdict of guilty only in the absence of substantial evidence to support it, viewing the evidence in the most favorable light to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941); Sanders v. United States, 5 Cir., 1969, 416 F.2d 194; United States v. Reed, supra; Fitzpatrick v. United States, 5 Cir., 1969, 410 F.2d 513. On motion for judgment of acquittal the test is whether, viewing the evidence presented most favorable to the government, a reasonable minded jury could accept the relevant and admissible evidence as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt. Weaver v. United States, 5 Cir., 1967, 374 F.2d 878; Curtis v. United States, 5 Cir., 1961, 297 F.2d 639; Lambert v. United States, 5 Cir., 1958, 261 F.2d 799.

 Appellant's argument as to the insufficiency of evidence can be summarized as follows. The government's case is grounded on the assertion that appellant was in possession in another state of the recently stolen vehicle. The evidence as to that possession was: (1) a 1967 white Cadillac was stolen in Tennessee on March 16, 1968; (2) a white Cadillac was observed in Jackson County, Alabama, on March 16, 1968, but its two occupants could not be identified; (3) appellant was seen in the right front seat of a white Cadillac in Jackson County, Alabama, at approximately 2 p. m. on March 16, 1968; (4) items located in the car at the time it was stolen were found in the possession of a friend of the appellant later the same day; (5) fingerprints of the appellant's right middle finger and right ring finger were found on the rear view mirror of the stolen car on April 23, 1968; and (6) on August 20, 1968, when questioned about a 1967 white Cadillac, the appellant stated that he had never been in the Cadillac about which he was questioned. Appellant contends that this evidence is insufficient to support a guilty verdict based entirely on the possessory inference which has developed under the Dyer Act.

The government contends there are not one or two elements from which possession could be inferred but four elements: (1) appellant's presence (right front seat) in a car similar to the stolen car only a few hours after the car was stolen in Tennessee, (2) appellant's fingerprints on the rear view mirror of the stolen car, (3) appellant's denial that he had ever been in the stolen automobile, and (4) articles which were in the car when stolen being found the same day of the theft in possession of a woman with whom defendant had been living. In addition, the fingerprints on the rear view mirror in the stolen car were appellant's right middle finger and right ring finger, thus justifying an inference that appellant had driven the car. See United States v. Costanzo, 4 Cir., 1968, 395 F.2d 441.

As stated by the Fifth Circuit in the recent case of Fitzpatrick v. United States, supra, 410 F.2d at 515:

"The narrow issue we decide is the sufficiency of the evidence of possession. Because unexplained possession of a recently stolen vehicle permits substantial inferences which may help prove two essential elements of the government's case, the evidence relied on as proof of possession must be scrutinized with care to prevent injustice. Guevara v. United States, 242 F.2d 745 (5th Cir. 1957). A mere suspicion of possession will not support the inference of transportation and guilty knowledge. Paige v. United States, 394 F.2d 105 (5th Cir. 1968); Montoya v. United States, 402 F.2d 847 (5th Cir. 1968)."

See Julian v. United States, 9 Cir., 1968, 391 F.2d 279. Also, in another recent Fifth Circuit case, the court discussing this inference stated:

"The inference allowed by unexplained possession is a powerful one. It is a substitute for direct proof of

guilty knowledge and courts, both trial and appellate, should proceed with extreme care in determining whether the evidence sufficiently establishes a basis for the inference. Cautious vigilance must be maintained against the employment of naked legal principle in a factual setting which provides no reasonable basis for the principle's application. On the other hand, the jury must not be *unduly* inhibited in its search for truth; it must be permitted to draw *fair* and *reasonable* inferences from creditable evidence."

Hale v. United States, 5 Cir., 1969, 410 F.2d 147, 150.

In Camilla v. United States, 6 Cir., 1953, 207 F.2d 339, the court held that the accused's fingerprints on the rear view mirror were insufficient to establish a prima facie case. In Allison v. United States, 10 Cir., 1965, 348 F.2d 152, the court held that neither the accused's fingerprints on the wing window of the right front door nor his presence in the right front seat was sufficient evidence of possession, defining possession as control, dominion or authority over the car.

Various courts have also held that presence of an accused in the stolen car is insufficient evidence of the possession necessary for conviction under the Dyer Act. Fitzpatrick v. United States, supra; Allison v. United States, supra (presence in right front seat *and* fingerprints on right front window not sufficient evidence); Baker v. United States, 8 Cir., 1968, 395 F.2d 368 (evidence that accused rode in car knowing it was stolen insufficient); Julian v. United States, 9 Cir., 1968, 391 F.2d 279 (accused found sleeping in stolen car *and* in possession of other articles which were in the stolen car insufficient evidence).

As noted above in the Julian case, possession by the accused of articles which were in a vehicle when it was stolen is insufficient evidence of possession, even when coupled with presence of the accused in the stolen car.

Thus, the above cases demonstrate that in individual cases fingerprints, presence in the stolen vehicle, fingerprints *and* presence in the stolen vehicle, and presence in the stolen vehicle coupled with possession of articles which were in the vehicle when it was stolen, have been held insufficient evidence to sustain the inference *that unexplained possession is guilty possession with respect to the Dyer Act.*

It may be said that the decision of Robertson's appeal is complicated by two recent Dyer Act decisions in this Court.

On April 15, 1969, we decided Hale v. United States, supra. In that case Hale's wife was found in possession of the stolen vehicle, six months after it had been stolen. Hale came to the scene, occasioned by an accident, and vigorously claimed the vehicle. On a second occasion he again claimed it. Upon arrest, however, he disclaimed all knowledge of where or how his wife came into possession. We affirmed the conviction, saying that "[W]hile the lack of actual possession may weaken an inference of guilty knowledge, it does not necessarily eliminate the basis for the inference". We also stated, "the jury must not be unduly inhibited in its search for truth: it must be permitted to draw *fair* and *reasonable* inferences from creditable evidence". Countering the argument that Hale's possession was constructive rather than actual, and thus inherently insufficient in a Dyer Act case, we held that our concern was not with labels but with whether there existed such a possessory relationship as would give rational assurance that possession, in fact, did exist.

On April 30, 1969, we decided Fitzpatrick v. United States, supra. The author of the opinion in *Fitzpatrick* had sat on the *Hale* appeal and concurred in the *Hale* opinion. Presumably, therefore, he saw no inconsistency in the two opinions. In *Fitzpatrick* it was held that to affirm the convictions would be a manifest miscarriage of justice. The appellants had been riding in the stolen

vehicle, which wrecked in flight from pursuing officers, after which they themselves fled on foot but later gave themselves up. Their defense was that they were hitchhiking with the driver and did not know the car had been stolen. The driver, if he ever existed, was never apprehended. A close reading of the opinion indicates that the court, for satisfactory reasons, expressly declined to reach the "actual-constructive possession" argument. Thus we see no material conflict in the decisions rendered in these cases.

In conclusion, we are of the opinion that the proof against Robert Leo Robertson, Jr. amply meets the tests applied in *Hale,* supra. Robertson was in custody from 4:05 p. m., March 16, 1968 until after the car was found in the woods. Consequently, his fingerprints were put on the rear view mirror the very day the vehicle was stolen.[2] Although he denied all guilty knowledge, instead of explaining as the boys did in Fitzpatrick, there can be no reasonable doubt that the deputy sheriff saw Robertson in the car the same afternoon of the theft, in his home community, and not over fifteen or twenty miles from South Pittsburgh. Moreover, the woman with whom he lived was caught the same afternoon with the goods from the stolen automobile. All this was simply too much for the jury to disregard. In the words of *Hale,* it gave rational assurance of Robertson's guilt to the exclusion of every reasonable hypothesis consistent with innocence.

Appellant also complains of certain instructions given the jury but since they were identical to those approved in *Hale,* that argument is foreclosed.

The judgment of conviction is

Affirmed.

2. The weight of the inference of guilt to be drawn from possession of recently stolen property varies, of course, with the circumstances of the case. The shorter the period between the theft and defendant's possession the stronger is the inference of guilt. Wharton's Criminal Evidence (12th ed.), Vol. 1, § 135, p. 258, n. 5 and 1969 Cumulative Supplement, citing State v. Dancyger, 29 N.J. 76, 148 A.2d 155, cert. denied, 360 U.S. 903, 79 S.Ct. 1286, 3 L.Ed.2d 1255.