**UNITED STATES of America,**
**Appellee,**

v.

**Preston H. WILLIAMS, Appellant.**

**UNITED STATES of America,**
**Appellee**

v.

**Frankie Bell DUREN, Appellant.**

**Nos. 74–1257, 74–1258.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1974.

Decided Oct. 3, 1974.

R. Thomas Day, Asst. Federal Public Defender, Kansas City, Mo., for appellant, Williams, in case No. 74–1257.

Joseph P. Teasdale, Kansas City, Mo., for appellant, Duren, in case No. 74–1258.

Anthony P. Nugent, Asst. U. S. Atty., Kansas City, Mo., for appellee in both cases.

Before MATTHES, Senior Circuit Judge, BRIGHT, Circuit Judge, and TALBOT SMITH,* Senior District Judge.

MATTHES, Senior Circuit Judge.

This consolidated appeal is from the judgment of conviction of each of the appellants, Preston H. Williams and Frankie Bell Duren, on the charge of transporting in interstate commerce a motor vehicle, knowing same to be stolen, in violation of 18 U.S.C. § 2312. The appellants, who are brothers-in-law, raise numerous issues. We affirm.

On August 3, 1973, a yellow 1967 Chevrolet Belair was stolen in Kansas City, Kansas. On the same day, the Kansas license plates on another car in that city were stolen and eventually were affixed to the stolen car.

* Honorable Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

At approximately 11:00 a. m. on August 8, 1973, a Missouri Highway patrolman observed a yellow 1967 Chevrolet with Kansas license plates parked alongside a highway near Cabool, in southwest Missouri. At the time, one male was seated on the passenger side of the auto and a second male was closing the hood.

Early in the afternoon of the same day, the appellants were seen by a second highway patrolman, Edward E. Kelsey, near the Amos Bridges residence, about 20 to 30 miles from Cabool, standing by the stolen Chevrolet. At the time Trooper Kelsey did not know the car was stolen, and he did not stop. Terry Bridges, the grandson of the owner of the nearby house, offered to assist the appellants in restarting the vehicle. While Bridges obtained a wrench and gasoline and appellant Williams stood by, appellant Duren attempted to repair the fuel pump on the Chevrolet. At one point Williams, at Duren's direction, poured gasoline into the carburetor while Duren attempted to start the car.

That afternoon, being unable to repair the vehicle, appellants opened the trunk of the car and removed a suitcase. The Bridges then drove Williams and Duren, along with their suitcase, to the nearby city of West Plains, Missouri, since the appellants ostensibly desired to obtain assistance at the Chevrolet garage there. Instead, however, the appellants went to the local bus station to inquire about departures from West Plains.

Meanwhile, Trooper Kelsey once again drove by the yellow Chevrolet, which now appeared to be abandoned along the highway near the Bridges home. By radio inquiry Kelsey learned that the vehicle had been stolen. After learning from the Bridges that they had driven the two men Kelsey had seen earlier by the car to West Plains, Kelsey drove there to search for the men. Around 5:30 p. m. he found Duren and Williams seated by a bridge in West Plains and placed them under arrest. The suitcase was nearby.

The precise circumstances surrounding the arrest and detention of the appellants in West Plains was the subject of testimony at a suppression hearing before trial.[1] That testimony and the findings of the district judge indicate that Williams and Duren were advised of their constitutional rights immediately after arrest. Upon being informed that they were under arrest for suspicion of auto theft, they denied any involvement with any car and they denied that the suitcase was theirs. They were then taken to the local sheriff's office in the county courthouse by Kelsey and a West Plains policeman. At the courthouse Duren and Williams were again given *Miranda* warnings, and Williams asked to speak with an attorney. The local prosecutor was called, and the prosecutor arranged for Williams to speak with a local attorney by telephone. Meanwhile the police attempted to obtain the fingerprints of the two men, since they had refused to give their names. Williams initially struggled with the officers in an attempt to resist being fingerprinted, but eventually cooperated. Each appellant gave a false name when Trooper Kelsey sought to fill out the personal data information accompanying each fingerprint card.

The following day Duren and Williams were interviewed separately and privately by an agent of the Federal Bureau of Investigation after each was again advised of his constitutional rights. Both waived the right to have an attorney present, and both spoke freely to the agent. Both denied any involvement with the car theft and once again gave fictitious names. The state-

1. The appellants sought to suppress as evidence certain exculpatory statements made by them to law enforcement officials while *in custody* in West Plains, raising as the sole ground for suppression the assertion that the statements were obtained by coercion and fear, in violation of the appellants' fifth amendment rights. The district court found no evidence that appellants' statements had been coerced and denied suppression.

ments by Williams to the agent were admitted at trial.

The government proved that the fingerprints of Duren had been found on the hood, rearview mirror, and right-hand door of the stolen Chevrolet, while Williams' fingerprints had been discovered on the hood of the car. Neither Williams nor Duren testified at trial, and the defense presented no other witnesses.

 The appellants' primary attack is that the evidence adduced at trial was insufficient to support the jury verdicts. They concede that if it is shown that a defendant is discovered in possession in one state of a vehicle recently stolen in another state and the defendant is unable to satisfactorily explain his possession, a jury may reasonably infer that the defendant not only knew that the vehicle was stolen but also that the defendant had transported the vehicle, or caused it to be transported, in interstate commerce. *See, e. g.,* United States v. Thundershield, 478 F.2d 241 (8th Cir. 1973); United States v. Rhodes, 433 F.2d 1307 (8th Cir. 1970). *See generally* Annot., 15 A.L.R.Fed. 856. But they insist that there is insufficient evidence that either was in sole or joint possession of the stolen car, and that the jury therefore could not properly employ the abovementioned inferences to establish guilt.

"Possession" as applied to Dyer Act cases has been defined as "to have management, care, dominion, authority and control, singly or jointly." United States v. Rhodes, *supra,* 433 F.2d at 1308, *citing* Lawrence v. United States, 400 F.2d 624, 627 (9th Cir. 1968). Obviously, the ability of the government to prove possession by the defendant and gain the benefit of the possessory inferences is a key factor in determining the outcome of a trial.

 But this element of the offense, possession, can be proven by circumstantial evidence. United States v. Johnson, 412 F.2d 787 (6th Cir.), cert. denied, 396 U.S. 993, 90 S.Ct. 959, 25 L.Ed.2d

124 (1969); United States v. Costanzo, 395 F.2d 441, 446 (4th Cir.), cert. denied, 393 U.S. 883, 89 S.Ct. 189, 21 L.Ed.2d 157 (1968). Moreover, the jury must be free to intelligently review and evaluate all the evidence, drawing the logical consequence and inferences therefrom, in concluding whether possession has been established. In discussing the possessory inferences in Dyer Act cases and the tension these inferences create between the defendant's right to acquittal absent proof of guilt beyond a reasonable doubt and the government's right to an unfettered consideration of the evidence by the jury, the Fifth Circuit stated:

> The inference allowed by unexplained possession is a powerful one. It is a substitute for direct proof of guilty knowledge and courts, both trial and appellate, should proceed with extreme care in determining whether the evidence sufficiently establishes a basis for the inference. Cautious vigilance must be maintained against the employment of a naked legal principle in a factual setting which provides no reasonable basis for the principle's application. On the other hand, the jury must not be *unduly* inhibited in its search for truth; it must be permitted to draw *fair and reasonable* inferences from creditable evidence. [Emphasis in original.]

Hale v. United States, 410 F.2d 147, 150 (5th Cir.), cert. denied, 396 U.S. 902, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969).

 In resolving the possession issue, we must review the evidence in the light most favorable to the jury verdict. Moody v. United States, 477 F.2d 548 (8th Cir. 1973); United States v. Rhodes, *supra.* Employing such a standard of review, we find that the evidence showing Duren's possession of the stolen Chevrolet overwhelmingly supports the verdict of the jury in his case.

Appellant Williams, on the other hand, relies on this court's opinion in Baker v. United States, 395 F.2d 368 (8th Cir. 1968), in which the Dyer Act conviction of an 18 year old youth was overturned

because the only indication of possession of the stolen car by the youth was evidence that he had entered the car in Little Rock, immediately learned from the occupants that it was stolen, and then rode in the stolen vehicle to St. Louis. We held that it was improper for the jury to infer possession from such a scanty record, and then infer the presence of the other necessary elements of the crime based upon this questionable initial inference of possession.

The courts of appeals are in apparent agreement that mere presence in a stolen automobile, even with knowledge that it is stolen, cannot in itself serve as sufficient proof of possession of the vehicle. *See, e. g.*, Lawrence v. United States, *supra*; Julian v. United States, 391 F.2d 279 (9th Cir. 1968); Baker v. United States, *supra*; Wheeler v. United States, 382 F.2d 998 (10th Cir. 1967). *But cf.* Baker v. United States, *supra*, 395 F.2d at 372–373 (Blackmun, J., dissenting). Thus one court, in explaining the reversal in Baker v. United States described *Baker* as "a case . . . in which the jury was allowed to infer possession from the defendant's mere presence in the car and from that possession infer interstate transportation of the stolen car." United States v. Stanley, 433 F.2d 637, 639· (5th Cir. 1970).

Here, the government has shown more than mere presence in the car on the part of Williams. *Compare* Julian v. United States, *supra, with* United States v. Rhodes, *supra*. Williams assisted Duren in attempting to restart the car. His fingerprints were found on the hood of the auto. He, like Duren, attempted to conceal his identity and association with the stolen car, and he resisted the fingerprinting process. *See* United States v. Robertson, 417 F.2d 873 (5th Cir. 1969). Thus, the jury could reasonably and properly conclude from the evidence that Williams was in joint possession of the stolen vehicle with his brother-in-law, Frankie Duren.

In any event, we conclude that the actions of Williams viewed as a whole could reasonably be considered by the jury as showing beyond a reasonable doubt that Williams aided or abetted a violation of the Dyer Act,[2] and should be held culpable as a principal. 18 U.S.C. § 2. *See* Smith v. United States, 403 F.2d 689 (5th Cir. 1968). *See also* United States v. Callahan, 439 F.2d 852 (2d Cir.), cert. denied, 404 U.S. 826, 92 S.Ct. 56, 30 L.Ed.2d 54 (1971). *See generally* Perkins on Criminal Law 657–663 (1969). Williams' false exculpatory statements, his concealment of identity, and his participation in the misrepresentation to Terry Bridges that he and Duren were from St. Louis, when they actually were from Kansas City, are all significant and probative evidence that Williams knew that the car was stolen and, with such knowledge, assisted in the transportation of the vehicle.

Accordingly, we find that the evidence was sufficient to support the conviction of each appellant.

Appellants also contend that they were substantially prejudiced and denied a fair trial by the following comment of the attorney for the government during his closing argument:

Now, let me leave you with this final thought. Think of the scales of justice, think of the two scales of justice, and think about what the evidence has been from the witness stand in this case, and think on one side of the scales, the prosecution and how that scale goes down for guilt and think about the evidence on the other scale from the witness stand and what evidence has there been from the witness stand, you look at that scale and that scale tells you that beyond a reasonable doubt, ladies and gentlemen, these two defendants are guilty as charged in this case.

The appellants assert that this reference to "the two scales of justice" was a subtle comment on the appellants' failure to

2. The aiding and abetting issue was properly submitted to the jury, without objection.

testify at trial and hence they were denied a fair trial. *See, e. g.,* Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Since no timely objection was made to the prosecutor's argument either during or after the completion of closing arguments, reversal is warranted only if plain error can be shown. United States v. Lawson, 483 F.2d 535 (8th Cir. 1973), cert. denied, 414 U.S. 1133, 94 S.Ct. 874, 38 L.Ed.2d 757 (1974).

The test for determining whether a statement before the jury by the judge or prosecutor was an improper comment upon a defendant's failure to testify has been defined as

> whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.

*See, e. g.,* United States v. Biondo, 483 F.2d 635, 644 (8th Cir. 1973), cert. denied, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974); United States v. Mahanna, 461 F.2d 1110, 1114–1115 (8th Cir. 1972); Davis v. United States, 357 F.2d 438, 441 (5th Cir.), cert. denied, 385 U.S. 927, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966).

■ We believe that the remark attacked by the appellants does not meet this test. Consideration thereof within the context of the whole record does not evince a manifest intent by the prosecutor to draw the attention of the jury to the failure of the appellants to testify, nor is it likely that the jury would even consider it an oblique reference to the appellants' silence. Moreover, counsel for the appellants stressed in closing argument the right of a defendant not to testify and the trial court instructed the jury that no presumption or inference of guilt could be drawn from the failure of Duren and Williams to take the stand.

The appellants also urge that they were denied fifth and sixth amendment rights during their detention in West Plains. They consequently urge that the trial court erred in allowing testimony at trial concerning the false exculpatory statements made by Williams to law officers while in custody in West Plains.

The assertion that the appellants were denied due process and that their statements in West Plains were coerced was the subject of a motion to suppress and an evidentiary hearing before Judge Collinson prior to trial. At the conclusion of the hearing, Judge Collinson credited the testimony of various law enforcement officials and found that the statements of the appellants were voluntarily made without fear or coercion.

■ After a careful review of the record of the suppression hearing, we find that the district judge's findings are supported by substantial evidence and are not clearly erroneous. Kilcrease v. United States, 457 F.2d 1328, 1331 (8th Cir. 1972). Consequently, we decline to disturb the trial court's suppression ruling.

■ Appellant Williams also asserts that he was denied his sixth amendment right to counsel at the time he made the exculpatory statements introduced at trial, and that therefore the trial court should have excluded testimony relating to these statements. We note that the district court was not given the opportunity to consider this contention at the suppression hearing, since the issue was first raised by the appellants on this appeal.

After reviewing the transcript of both the suppression hearing and the trial, we find no merit to appellants' sixth amendment claim. Williams was fully advised of his rights by the state law enforcement officials and was allowed to speak with an attorney when he requested the opportunity to do so. The following day he was again fully advised of his constitutional rights by a federal law enforcement officer, but he willingly volunteered exculpatory statements after waiving his right to request the presence of an attorney. It is apparent from the record that Williams knew that the private questioning on the second day was by a federal officer investigat-

ing federal crimes, rather than by the state authorities as on the previous day, and that he knew he could reassert his right to assistance of counsel. Consequently, we find that Williams' waiver of counsel before talking to the FBI agent was knowing and intelligent, and given voluntarily and without compulsion. *See* United States v. Grady, 423 F.2d 1091 (5th Cir. 1970). *See also* United States v. Hodge, 487 F.2d 945 (5th Cir. 1973). *Cf.* United States v. Scogin, 459 F.2d 182 (8th Cir.), cert. denied, 409 U.S. 865, 93 S.Ct. 159, 34 L. Ed.2d 114 (1972).

Appellants' other claims of error, some of which are raised here for the first time, have been carefully considered and found lacking in merit. Concluding as we do that the appellants received a fair trial, we affirm.