311 So.2d 332

**William M. BULLOCK**

v.

**STATE.**

**6 Div. 825.**

Court of Criminal Appeals of Alabama.

April 1, 1975.

No brief for appellant.

William J. Baxley, Atty. Gen., and Quentin Q. Brown, Jr., Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Buying, etc., stolen property: sentence, five years imprisonment, Code 1940, T. 14, § 338.

Someone took the 1967 Volkswagen sedan belonging to Mrs. Bonnie Mary Dunn on the parking lot adjacent to her apartment. The theft occurred November 30, 1972.

The Sheriff's deputy found the car in the possession of Bullock with the serial number burnt out with some kind of torch.

Bullock claimed that he bought the car without an engine from one Benny Reid and paid $175.00 for it in this condition.

However, the Bill of Sale which was purportedly executed on December 2, 1972, calls for a 1965, instead of a 1967, car.

Apparently, Bullock also produced a license issued by the Probate Judge of St. Clair County, issued on December 2, 1972. A great deal of the cross-examination of appellant went into whether or not he had obtained the tags for the car before he purchased it from Reid. As illustrative of his testimony, on cross-examination, we quote:

"* * * Now, when you went down and had this conversation with Detective Lowe and Detective Lowe advised you of your rights and told you that being that you were in possession of a Volkswagen that it was necessary for him to advise you of your rights because you would have been a suspect, you refused at that time to make a statement after he advised you of your rights, is that right?

"A That's right.

"Q You at no time sought to explain to anyone legally investigating the theft of this automobile how you came about it, did you?

"A You can't explain to a smart alec to start with.

**610**

"Q You made a determination at this time and place in the presence of those people that Mr. Lowe was a smart alec?

"A That's right, I sure did."

\* \* \* \* \* \*

"Q Now, Mr. Bullock, is there any way you can account for how you were able to get that tag on the date of December 2nd?

"A That's my business."

There was no motion to exclude the State's evidence and no request for the affirmative charged nor a motion for a new trial. See *Alexander*, 44 Ala.App. 143, 204 So.2d 486.

 We note the inference which a jury may legitimately draw from the recent, exclusive and unexplained possession of stolen property. See Buckles v. State, 291 Ala. 359, 280 So.2d 823; Sewell v. United States, 8 Cir., 406 F.2d 1289. The more remote in time the possession stands to the time of the theft the less strong are the circumstances of possession.

Conversely, the sooner after the taking the more likely it is that the possessor is the thief. *Davenport,* Ala.App., 299 So.2d 767; State v. Dancyger, 29 N.J. 76, 148 A.2d 155; R. v. Cockin, 2 Lew.Cr.C. 235; Wigmore, Evidence (3d ed.) §§ 152, and 2513; Note, Presumption of Larceny from the Unexplained Possession of Stolen Goods, 23 Va.L.Rev. 616; and Wharton Criminal Evidence (13th ed.), § 139 (p. 239).

We have considered the entire record under Code 1940, T. 15, § 389, including the following:

a) The clerk's certificate; [T. 7, § 767]

b) The court reporter's certificate;

c) The statement of the organization of the court; (Sup.Ct.R. 52) ;

d) The indictment (caption, charge, conclusions, and required endorsements) ;

e) Judgment entry (arraignment, presence of counsel, twelve jurors, empanelling and swearing of jury, verdict, adjudication of guilt, allocutus, sentence and notice of appeal) ;

f) Each ruling of the trial judge adverse to the appellant.

From this examination we conclude that the judgment is to be

Affirmed.

All the Judges concur.