UNITED STATES of America, Appellee,

v.

General Herman ANDREWS, Appellant.

No. 80-1753.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1980.

Decided Jan. 9, 1981.

Leonard J. Frankel, R. Kristin Weaver, Wolff & Frankel, Clayton, Mo., for appellant.

Robert D. Kingsland, U. S. Atty., Evelyn M. Baker, Asst. U. S. Atty., argued, St. Louis, Mo., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and LARSON,* Senior District Judge.

STEPHENSON, Senior Circuit Judge.

A jury convicted defendant General Herman Andrews on one count of interstate transportation of stolen goods in violation of 18 U.S.C. § 2314. In this appeal, the defendant attacks the sufficiency of the evidence and claims that an instruction given by the district court[1] was prejudicial error. We affirm the jury verdict.

I.

We, of course, view the evidence in the light most favorable to the jury verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). With that standard in mind, the record suggests the following summary of facts.

Defendant Andrews was an independent truck driver with his home in St. Louis, Missouri. He owned his own tractor and a

---

* The Honorable Earl R. Larson, Senior Judge for the District of Minnesota, sitting by designation.

1. The Honorable James H. Meredith, United States District Judge for the Eastern District of Missouri, presiding, sentenced the defendant to imprisonment for five years.

flatbed trailer, and primarily hauled loads between St. Louis and the Detroit, Michigan, area.

The indictment in this case charged Andrews with the illegal transportation of a "drop deck" trailer [2] and three farm tractors, which were loaded on the trailer, from Michigan to Stanton, Missouri. The trailer and farm tractors were stolen from the Truck City parking lot, site of a large truck stop near Dearborn, Michigan. Elijah Miller, owner of a trucking company located at Truck City, had been hired to haul the trailer to Troy, New York. Miller testified that he picked up the equipment on Wednesday, August 1, 1979. The goods were stolen from the Truck City lot sometime the following Saturday, Sunday or Monday. They were discovered missing Monday at about 9:00 a. m.

Defendant Andrews approached Miller at Truck City on Friday and Saturday of that week attempting to obtain a load going to the St. Louis area. On Saturday Miller told him that a load would be available Monday but that it required a drop deck trailer. While talking to the defendant, Miller apparently also made a passing reference to the load of farm tractors that was bound for Troy and, at that point, was on the Truck City parking lot.

On Monday, August 6, the defendant was in possession of the stolen goods. Andrews parked the stolen trailer and farm tractors at the Floyd Wilson farm near Stanton, Missouri, in Franklin County. Andrews and Judge Charles Kitchen, a circuit judge for the City of St. Louis, had discussed building a lake on Kitchen's land which was near the Wilson farm. They planned to store the equipment used to build the lake at the Wilson farm. On the morning of August 6, Andrews told Wilson that he was bringing out two bulldozers to dig the lake. Later that day the defendant parked the stolen goods on the Wilson farm.

The Sheriff of Crawford County, which borders Franklin County on the west, received a tip on August 15 from a confidential informant concerning the tractors on the Wilson farm. The sheriff's office in Franklin County investigated and discovered that the equipment was stolen. The FBI was called in and conducted an investigation which centered on the defendant.

Andrews admitted that he had driven the stolen trailer to the Wilson farm but denied knowing that it was stolen. The defendant maintained that a third party, a man that Andrews had never seen before or since, approached him and asked for help in moving the trailer and tractors. The defendant said that he met this third party at a truck stop while returning from Michigan on Sunday, August 5. Andrews claimed that the man said he was in a financial dispute with his brother and needed to hide the truck. The third party directed Andrews to the trailer which was parked in St. Louis. Originally, they planned to take the trailer to another truck stop but later they decided, according to the defendant, to take it to the Wilson farm.

The defendant said that while he and his co-driver, Dennis DeFrenne, were unloading the tractors at the Wilson farm, the mystery man departed without a word. It was at this point, Andrews testified, that he became suspicious about the tractors and thought that "there was something wrong."

Despite this uneasy feeling, the defendant told Judge Kitchen on August 10 that he and another person were forming a partnership in a farming operation and planned to use the equipment parked at the Wilson farm. Andrews also asked if there was any land available to rent. Further, on another trip to Michigan about a week after the theft, Elijah Miller told the defendant that the equipment had been stolen. The defendant did not answer.

## II.

The defendant asserts that the evidence did not create a submissible issue of guilt. He argues that the government was not

---

**2.** A drop deck trailer is used to haul over-sized loads. Its floor is closer to the ground than a flatbed and this allows hauling larger shipments.

entitled to a permissible inference which the court gave to the jury in its instructions. The permissible inference instruction states that one in unexplained possession of recently stolen property in a state other than the one in which it was stolen is ordinarily a circumstance from which a jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew that the property was stolen and that the person transported it in interstate commerce.[3] *See United States v. Wilson*, 523 F.2d 828, 830 (8th Cir. 1975). The defendant argues that the evidence does not sufficiently establish a basis for the inference. *See United States v. Williams*, 503 F.2d 480, 483 (8th Cir. 1974).

[1, 2] We disagree and hold that there was ample evidence to support the instruction of the permissible inference in this case. The defendant admitted that he drove the stolen trailer to the Wilson farm and Floyd Wilson testified that the defendant delivered the goods to the farm. This is sufficient to satisfy the "possession" element of the inference and it was for the jury to determine whether the inference allowed by the instruction should have been applied in this case. *See United States v. Williams, supra*, 503 F.2d at 483–84; *United States v. Rhodes*, 433 F.2d 1307, 1308 (8th Cir. 1970); *Sewell v. United States*, 406 F.2d 1289, 1294 (8th Cir. 1969). *See also United States v. Neville*, 516 F.2d 1302, 1307–08 (8th Cir.), *cert. denied*, 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 251 (1975); *United States v. Johnson*, 466 F.2d 537, 538–39 (8th Cir. 1972), *cert. denied*, 409 U.S. 1111, 93 S.Ct. 921, 34 L.Ed. 693 (1973); Anno. 15 A.L.R.Fed. 856

(1973). There was evidence that placed the defendant at the site of the theft near the time it was stolen. Add to this his possession of the stolen goods a day later, his failure to adequately explain that possession and his actions after the crime; and it is clear that the guilty verdict was supported by sufficient evidence.

The defendant also challenges an instruction which stated that the jury should consider out-of-court statements by the defendant with caution and that the evidence should be disregarded unless the statements were knowingly made. *See* 1 Devitt & Blackmar, *Federal Jury Practice and Instructions*, § 15.06 (3d ed. 1977). The defendant argues that the instruction created an issue which was not a part of the case because the defendant admitted the statements to the FBI agents were voluntarily made. The defendant relied upon these statements and his own testimony to explain his possession of the stolen goods. He claims that the instruction may have resulted in the jury unfairly disregarding the defendant's explanation.

Ordinarily this instruction is used where the out-of-court statement is incriminating rather than exculpatory. The government argues that because of the unbelievable nature of the defendant's explanation, the out-of-court statements were tantamount to a confession. We think the government's position has merit and, in any event, any error on this point was harmless. The defendant testified to substantially the same facts at trial and thus the jury was able to fully weigh his version of the facts.

Affirmed.

---

**3.** The relevant portions of the instruction given by the court were as follows:

Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

Possession in one state of property recently stolen in another state, if not satisfactorily explained is ordinarily a circumstance from which the jury may reasonably draw the in-

ference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession not only knew it to be stolen property, but also transported it, or caused it to be transported, in interstate commerce.

Ordinarily, the same inferences may reasonably be drawn from a false explanation of possession of recently-stolen property.

\* \* \* \* \* \*

You will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.